# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Julie Karpik, Michelle Lewis, Deborah Mondell, Robert Owen, Linda Humenik, Diane George, and Theodore George, individually and as representatives of a class of similarly situated persons, and on behalf of the Huntington Investment and Tax Savings Plan,<br><br>               Plaintiffs,<br><br>v.<br><br>Huntington Bancshares Incorporated, Huntington Bancshares Incorporated Board of Directors, and Huntington Bancshares Incorporated Investment and Administrative Committee,<br><br>               Defendants. | Case No. 1:17-cv-1153-MHW-KAJ<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## <u>INTRODUCTION</u>

Plaintiffs Julie Karpik, Michelle Lewis, Deborah Mondell, Robert Owen, Linda Humenik, Diane George, and Ted George ("Plaintiffs") submit this Memorandum in support of their Motion for Preliminary Approval of Class Action Settlement. A copy of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as **<u>Exhibit 1</u>** to the accompanying Declaration of Kai Richter ("*Richter Decl.*").[1] This Settlement resolves Plaintiffs' class action claims against Defendants Huntington Bancshares Incorporated ("Huntington"), the Huntington Board of Directors ("Board"), and the Huntington Investment and Administrative Committee ("Committee") concerning Defendants' administration and management of the Huntington 401(k) Plan, formerly known as the Huntington Investment and Tax Savings Plan ("Plan").

Under the terms of the proposed Settlement, Huntington will pay a gross settlement amount of $10,500,000 into a common fund for the benefit of Settlement Class. This is a significant recovery for the Class that falls well within the range of court-approved settlements in similar ERISA cases. As discussed below, the current Settlement is fair, reasonable, and adequate, and merits preliminary approval so that the proposed Notices can be sent to the Settlement Class. Among other things supporting preliminary approval:

- The Settlement was negotiated at arm's length by experienced and capable counsel, after the Court's ruling on a motion to dismiss and extensive discovery;

- The proposed Settlement Class is consistent with classes approved in other comparable ERISA cases;

- The Settlement Class has been vigorously represented by the Class Representatives and Class Counsel throughout the litigation;

---

[1] Capitalized terms have the meaning assigned to them in Article 1 of the Settlement Agreement, unless otherwise specified herein.

1

- The Settlement provides for significant monetary relief that will be distributed fairly and equitably to Class Members pursuant to a common Plan of Allocation;

- The Settlement provides for automatic distribution of the settlement funds to Current Participants and Former Participants in the Plan;

- The Released Claims are tailored to the claims that were asserted in the action or could have been asserted based on the same factual predicate;

- The proposed Notice provides easy-to-understand information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement and appear at a final Fairness Hearing.

Accordingly, Plaintiffs respectfully request that the Court enter an order: (1) preliminarily approving the Settlement; (2) approving and authorizing distribution of the proposed Notice; (3) certifying the proposed Settlement Class for purposes of settlement; (4) scheduling a final Fairness Hearing; and (5) granting such other relief as set forth in the proposed Preliminary Approval Order submitted herewith. This motion is not opposed by Defendants as parties to the Settlement.

## BACKGROUND

### I. PROCEDURAL HISTORY

#### A. Pleadings and Court Proceedings

Plaintiffs Julie Karpik, Michelle Lewis, Deborah Mondell, and Robert Owen filed this action on December 29, 2017, alleging that Huntington and related entities breached their fiduciary duties of prudence and loyalty under ERISA by selecting and retaining Huntington-managed investments for the Plan that were costlier and performed worse than non-proprietary alternatives, and engaged in transactions prohibited by ERISA. *See ECF No. 1*. Plaintiffs later filed an Amended Complaint that included three additional plaintiffs, Linda Humenik, Theodore George and Diane George. *ECF No. 21*. Defendants moved to dismiss, *ECF No. 24*, and on September 29, 2019, the Court granted in part and denied in part Defendants' motion. *ECF No. 53*. The Court dismissed the prohibited transaction claims but allowed the breach of fiduciary duty claim to proceed. *Id.*

2

### B. Discovery, Mediation, and Settlement

Thereafter, the Parties engaged in extensive discovery. Defendants produced more than 20,000 pages of documents, and the Class Representatives produced more than 9,000 pages. *Richter Decl. ¶ 11.* Plaintiffs also subpoenaed five third parties and received over 1,100 documents as a result of the subpoenas. *Id. ¶ 12.* In addition, Class Counsel took the depositions of two fact witnesses, and Defendants took depositions of all seven Plaintiffs. *Id. ¶ 13.*

On June 18, 2020, after this discovery was completed, the Parties participated in a mediation with Hunter Hughes III, a nationally respected mediator who has mediated numerous ERISA class actions. *Id. ¶ 14.* The parties submitted extensive mediation briefs in advance of the mediation. *Id. ¶ 15.* While they did not reach a settlement during the mediation session, the parties eventually agreed to a settlement amount recommended by the mediator. *Id. ¶ 15.* The terms of that agreement are memorialized in the Settlement Agreement that is the subject of this motion.

## II. OVERVIEW OF SETTLEMENT TERMS

### A. The Settlement Class

The Settlement Agreement applies to the following Settlement Class:

> [A]ll participants and beneficiaries of the Huntington 401(k) Plan, formerly known as the Huntington Investment and Tax Savings Plan, from December 29, 2011 through the date of preliminary approval, excluding the Defendants or any Plan participant who is or was a fiduciary to the Plan during the Class Period.

*See Settlement Agreement ¶ 1.38.*[2] Based on information provided by the Plan's recordkeeper, there are approximately 38,851 class members. *Richter Decl. ¶ 3.*

### B. Monetary Relief

Under the Settlement, Huntington will contribute a Settlement Amount of $10.5 million to a common settlement fund (the "Settlement Fund"). *Settlement Agreement ¶¶ 1.37, 3.1(a).* After

---

[2] This Settlement Class is consistent with the class that Plaintiffs sought to certify for litigation purposes, *see Am. Compl. ¶ 103* and now includes an end date for the Class Period.

deducting any Attorneys' Fees and Costs, Administrative Expenses, and Class Representative service awards approved by the Court, the remainder (known as the Distributable Settlement Amount) will be distributed to Class Members according to the Plan of Allocation in the Settlement. *Id. ¶¶ 1.14,1.31, 3.2 & Ex. C.*

Under the Plan of Allocation, 95% of the Distributable Settlement Amount will be allocated to the Investment Claim (the "Investment Pool") and 5% will be allocated to the Recordkeeping Fee Claim (the "Recordkeeping Pool"). *Id. Ex. C.* This roughly approximates the relative proportion of damages that Plaintiffs claimed in connection with each type of claim. *Richter Decl. ¶¶ 4, 7.* Consistent with the claims that were asserted, the Investment Pool will be allocated among Class Members pro rata based on their quarterly balances invested in Huntington Funds during the Class Period. *Settlement Agreement, Ex. C.* The Recordkeeping Pool will be allocated among Class Members pro rata based on the number of quarters during the Class Period they had an account balance in the Plan, with quarters through the third quarter of 2016 weighted four times more heavily than subsequent quarters. *Id.* This weighting is also consistent with the claims that were asserted, as Plaintiffs alleged that the Plan's recordkeeping expenses were higher prior to the third quarter of 2016 when The Huntington National Bank was the Plan's recordkeeper, and later declined after Fidelity took over the recordkeeping function. *Richter Decl. ¶ 4.*

Current Participants' accounts in the Plan will be automatically credited with their share of the Settlement Fund. *Settlement Agreement ¶ 2.8.* Former Participants, who do not have an account in the Plan, will also receive automatic distributions by check, and will have the opportunity to submit a Rollover Form allowing them to have their distribution rolled over into an individual retirement account or other eligible employer plan. *Id. ¶ 2.7, 3.2 & Ex. C.* Former Participants who do not timely submit a Rollover Form will be sent a check directly. *Id. Ex. C.*

To minimize Administrative Costs, disbursements to Former Participants will be subject to a $15 *de minimus* threshold. *Id. ¶ 3.2(d) & Ex. C.* However, any individual allocations that do not meet the *de minimus* threshold will be reallocated among eligible Class Members prior to the distribution of funds. *Id. Ex. C.* Any checks that remain uncashed after the distribution of funds will revert to the Qualified Settlement Fund and will be paid to the Plan for the purpose of defraying administrative expenses. *Id. ¶ 3.4.*

## C. Release of Claims

In exchange for this relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties" as defined in the Settlement) from all claims that "have been asserted in this litigation or which could have been asserted based on the same factual predicate as those Claims." *Id. ¶ 1.33.* This includes those that in any way arise out of, relate to, are based on, or have any connection with the Plan's management and administration, including, but not limited to any fees, expenses, investment option performance, monitoring of investment options, revenue sharing, recordkeeping fees, administrative fees, total plan costs, the use of money market funds as investment options, share class of the investment options, or any other aspect of Plan administration or management, or would have been barred by res judicata had the Action been fully litigated to a final judgment. *Id.*

## E. Class Notice and Settlement Administration

Class Members will be sent a notice of the settlement ("Notice") via U.S. Mail. *Id. ¶¶ 2.7 & Ex. B.* The Notice sent to Former Participants will also include a Former Participant Rollover Form enabling them to make the election described above. *Id. ¶ 2.7 & Ex. E.* These Notices provide information to the Settlement Class regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the settlement; (4) the option for Former

Participants to submit Rollover Forms; (5) Settlement Class Members' right to object to the Settlement and the deadline for doing so; (6) the class release; (7) the identity of Class Counsel and the amount of Attorneys' Fees they will seek in connection with the Settlement; (8) the amount of any requested Class Representatives' compensation; (9) the date, time, and location of the final approval hearing; and (10) Settlement Class Members' right to appear at the final approval hearing. *Id. Ex. B.*

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post the Settlement Agreement, Notice, Former Participant Rollover Form, Amended Complaint, and other relevant case documents. *Id. ¶ 2.10.* In addition, the Settlement Administrator will establish a toll-free telephone line that will provide callers the option of speaking with a live operator if they have questions. *Id. ¶ 2.11.*

### F.     Attorneys' Fees and Administrative Expenses

Under the Settlement, attorneys' fees are subject to Court approval and will not exceed one-third of the Settlement Amount. *Id. ¶ 7.2.* In addition, the Settlement Agreement provides for recovery of litigation Costs and Administrative Expenses, *id.*, and service awards of up to $7,500 per Class Representative. *Id. ¶ 7.1.* Any such awards shall be determined by the Court in its discretion and "shall be considered by the Court separately from its consideration of the fairness, reasonableness, and adequacy of the Settlement." *Id. ¶ 7.2(c).*

### G.     Independent Fiduciary Review

Finally, as required under DOL regulations, the Settlement will be subject to review by an Independent Fiduciary acting on behalf of the Plan as well as the Court. *Id. ¶ 2.6(b); see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830

("PTE 2003-39"). The Independent Fiduciary will issue its report at least 30 days before the final Fairness Hearing so that the Court may consider it. *Id.*

## ARGUMENT

### I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement agreement that will bind absent class members. Approval is to be given if a settlement is untainted by collusion and is "'fair, reasonable, and adequate.'" *Wright v. Premier Courier, Inc.*, 2018 WL 3966253, at * 3 (S.D. Ohio Aug. 17, 2018) (Watson, J.). The Sixth Circuit has recognized a "strong 'federal policy favoring settlement of class actions'" such as this. *Stanley v. Turner Oil & Gas Properties, Inc.*, 2018 WL 2268138, at *1 (S.D. Ohio Mar. 6, 2018) (quoting *Sims v. Pfizer, Inc.*, 2015 WL 12748836, at *1 (E.D. Mich. Nov. 13, 2015); *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. V. Gen. Motors Corp.*, 497 F.3d 16, 632 (6th Cir. 2007).

Settlement approval involves three stages: (1) preliminary approval; (2) notice to the Class; and (3) a fairness hearing and final approval. *In Re Polyurethane Foam Antitrust Litig.*, 2012 WL 12868246, at *4 (N.D. Ohio Jan 23, 2012) (citing *Tenn. Assoc. of Health Maintenance Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001)). At the preliminary approval stage, courts examine the proposed settlement for "obvious deficiencies" before determining whether it is in the "range of possible approval." *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621 (E.D. Mich. 2020) (citation omitted). The preliminary-approval inquiry the Court performs at this stage "is not an onerous one and can often 'be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties.'" *Stanley*, 2018 WL 2268138, at *1 (citing *Sims*, 2015 WL 12748836, at *1 (E.D. Mich. Sept. 13, 2015) (quoting *Manual for Complex Litigation* § 21.632 (4th ed. 2004)). The ultimate fairness determination is left for final approval, after class members receive notice of the settlement and

have an opportunity to be heard.

In 2018, Rule 23(e) was amended to specify uniform standards for settlement approval. *See* Fed. R. Civ. P. 23(e) advisory committee note (2018). The amended rule states that, at the preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies the following factors the court must ultimately consider at the final approval stage in determining whether a settlement is "fair, reasonable, and adequate":

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Courts within the Sixth Circuit have generally continued to apply the same "within the range of possible approval" standard to preliminary approval after the 2018 amendments. *See* *Wallburn v. Lend-A-Hand Servs., LLC*, 2019 2020 WL 2744101, at *7 (S.D. Ohio May 26, 2020); *Garner*, 333 F.R.D. at 626. "The goal of this amendment is not to displace any [existing] factor, but rather to focus the court … on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory cmte note (2018).

## II.  THE SETTLEMENT SATISFIES THE STANDARD FOR PRELIMINARY APPROVAL

As discussed below: (1) the settlement was negotiated at arm's length by experienced counsel after extensive litigation with the help of a nationally respected mediator; (2) the Class

was adequately represented by the Class Representatives and Class Counsel; and (3) the relief provided is adequate and equitable to all Class Members. Accordingly, this Court should grant preliminary approval of the Settlement and authorize notice to the Class.

### A. The Settlement Is the Product of Arm's-Length Negotiations Facilitated by a Neutral Mediator After Extensive Litigation

Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery. *See Koenig v. USA Hockey*, 2012 WL 12926023, at *4 (S.D. Ohio Jan. 10, 2012) (Watson, J) ("Based on the pleadings filed, as well as the discovery and mediation efforts, the Parties have a clear view of the strengths and weaknesses of their cases.") (citation omitted); *Garner*, 333 F.R.D. at 627; *In re Polyurethane*, 2012 WL 12868646, at *4. That is precisely the situation presented here. At all times, the parties negotiated at arm's length. *See Richter Decl., ¶ 14-15*. Moreover, the parties engaged in extensive formal discovery, including both written discovery and deposition discovery, before engaging in mediation, and were further informed by the Court's ruling on the motion to dismiss. This gave the parties a clear view of the facts and law, and the strengths and weaknesses of their case.

Courts in this district have approved settlements where the proceedings were much less advanced. *See In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009) (approving settlement before the motion to dismiss stage); *Barnes v. Winking Lizard, Inc.*, 2019 WL 1614822, at *3 (N.D. Ohio Mar. 26, 2019) (approving settlement before any motion practice where parties had conducted only informal discovery to inform their views of the case); *Moore v. Aerotek, Inc.*, 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017 (approving settlement where parties did not complete any formal discovery); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) (same); *see also Mees v. Skreened, Ltd.*, 2016 WL 67521, at *3

9

(S.D. Ohio Jan 26., 2016) (finding discovery adequately informed counsel where parties exchanged "thousands of pages" of documents but had yet to depose any witnesses). Based on the extensive record that was developed and the stage of the proceedings, there is no question that the parties had sufficient information to evaluate settlement. Further, the adversarial nature of the litigation and the involvement of a third-party mediator underscore that the parties dealt with each other at arm's length.

## B.   The Settlement Class Was Adequately Represented by the Class Representatives and Class Counsel, Who Support the Settlement

"The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Smith v. Ajax Magnethermic Corp.*, 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) (quoting *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)); *Wright,* 2018 WL 3966253, at *5. Once again, that is the situation presented here.

"Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans[.]" *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017). As detailed in the accompanying attorney declaration, Nichols Kaster has (1) won favorable rulings on dispositive motions and/or class certification in over a dozen ERISA cases; (2) recently tried two ERISA class actions; (3) successfully litigated an appeal before the First Circuit in *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018) ("*Brotherston II*"); and (4) negotiated numerous ERISA class action settlements in addition to the present Settlement. *Richter Decl., ¶ 19.* Accordingly, Class Counsel are clearly adequate to represent the class, and were well-equipped to negotiate the Settlement that was reached in this case. *See Sims v. BB&T Corp.*, 2017 WL 3730552, at *5 (M.D.N.C. Aug. 28, 2017) ("[T]he Court finds that the plaintiffs' interests would be "fairly and adequately" represented

by appointment of… Nichols Kaster as class counsel."). Based on their experience handling similar ERISA cases, and the record that was developed, Class Counsel have concluded that the relief provided by the Settlement is fair and reasonable. *Richter Decl.. ¶ 15.*

The Settlement Class Members also have been adequately represented by the Class Representatives in this case. The Class Representatives have fulfilled their duties to the class by (among other things) reviewing the complaints, producing documents, reviewing and signing written discovery responses, communicating regularly with Class Counsel, testifying at their depositions, and reviewing the proposed Settlement. *See T. George Decl. ¶ 3*; *D. George Decl. ¶ 3; Karpik Decl. ¶ 3*; *Lewis Decl. ¶ 3; Mondell Decl. ¶ 3; Owen Decl. ¶ 3; Humenik Decl. ¶ 3.* These are the type of actions that constitute adequate representation. *See Willis v. Big Lots, Inc*., 242 F. Supp. 3d 634, 649–50 (S.D. Ohio 2017) (Watson, J) (finding class representatives adequately represented class by reviewing pleadings, assisting counsel in responding to requests for production and interrogatories, and being available for depositions). Each of the Class Representatives also have submitted declarations expressing their support for the Settlement. *See T. George Decl. ¶ 6*; *D. George Decl. ¶ 6; Karpik Decl. ¶ 6; Lewis Decl. ¶ 6; Mondell Decl. ¶ 6; Owen Decl. ¶ 6; Humenik Decl. ¶ 6.*

### C. The Settlement Provides Significant Relief to Class Members through an Effective Distribution Method and Treats Class Members Equitably

Both the Class Representatives and Class Counsel support the settlement because it represents a favorable outcome for the Settlement Class. The $10,500,000 settlement amount speaks for itself. Indeed, this eight-figure recovery is substantial not only in the aggregate, but also as a percentage of Plan assets (approximately 1%). *Richter Decl. ¶ 6.* This compares favorably with other ERISA 401(k) settlements with banks that have received court approval, such as M&T Bank (0.88%), Deutsche Bank (0.65%), and BB&T (0.52%). *Id.*

11

Moreover, the settlement also represents a significant portion of the damages that Plaintiffs calculated were caused by Defendants' alleged fiduciary breaches. *Richter Decl. ¶ 7.* Plaintiffs' calculated the following losses in preparation for their mediation:

- <u>Investment Claim Losses</u> : $33.7 million
- <u>Recordkeeping Claim Losses</u>: $1.25 million

*Id.* The $10.5 million recovery represents approximately 30% of the total damages that Plaintiffs claimed were associated with Defendants' alleged fiduciary breaches. *Id.* This also compares favorably to other class action settlements. *See, e.g., Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving $24 million ERISA 401(k) settlement that represented 19% of estimated damages, including damages due to excessive recordkeeping expenses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 185 (C.D. Cal. July 30, 2018) (approving $12 million ERISA 401(k) settlement that represented approximately one-quarter of estimated total plan-wide losses of $47 million). *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *In re Polyurethane Foam Antitrust Litigation*, 2015 WL 1639269, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide [damages] is an impressive result in view of these possible trial outcomes."); *Barnes,* 2019 WL 1614822, at *5 (*citing Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (finding a recovery of around 1/3 of damages before deducting fees and costs was "well above" average)); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Finally, the recovery will be distributed equitably to class members pursuant to a Plan of Allocation based on the claims that were asserted in the action. *See Settlement, Ex. C.* This is also consistent with settlements approved in other cases.[3]

### D. Plaintiffs Would Have Faced Potential Litigation Risks and Substantial Delay in the Absence of the Settlement

In the absence of a Settlement, Plaintiffs would have faced significant litigation risk. *See In re Nationwide*, 2009 WL 8747486, at *4 (noting that the risk of continued litigation includes the risk that there could be no recovery at all); *Shanechian v. Macy's,* 2013 WL 12178108, at *4 (S.D. Ohio June 25, 2013) (noting difficulty of proving both liability and damages at trial even where Plaintiffs prevailed on previous motion to dismiss and class certification rulings). These risks are illustrated by two recent trial judgments in favor of the defendants in ERISA breach of fiduciary duty cases involving defined contribution plans. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Sacerdote v. New York Univ.*, 2018 WL 3629598, at (S.D.N.Y. July 31, 2018). Moreover, even if Plaintiffs established a fiduciary breach, it is "difficult" to measure damages in cases alleging imprudent or otherwise improper investments. *See* Restatement (Third) of Trusts § 100 cmt. b(1).  Thus, significant issues would have remained regarding proof of loss. *See Sacerdote*, 328 F. Supp. 3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result.").[4]

---

[3] *See, e.g., Velazquez v. Mass. Fin. Servs.*, No. 1:17-cv-11249, ECF No. 91-1, ¶ 6.4.3 (June 14, 2019); *Sims v. BB&T*, No. 1:15-cv-00732, ECF No. 436-2, ¶ 6.4.2 (Nov. 30, 2018); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614, ECF No. 174-3, ¶ 6.4.3 (Dec. 26, 2017).

[4] As a case in point, Class Counsel recently suffered an adverse judgment regarding a loss issue midtrial in an ERISA case against Putnam, later appealed to the First Circuit and prevailed on the same issue, and then settled the case before the trial was completed (following over four years of litigation). *See Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018) (partly vacating

While the outcome of the litigation was uncertain, there is little doubt that continued proceedings would have been complex, costly, and lengthy. As other courts have recognized, "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."). Indeed, it is not unusual for these cases to extend for a decade or longer before final resolution. *See Shanechian,* 2013 WL 12178108, at *5 (finding ERISA case that had already lasted for six years could last for six more years absent a settlement); *Tussey v. ABB Inc.,* 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (noting that the case had originally been filed on September 11, 2006).

Given the risks, cost, and delay of further litigation, it was reasonable and appropriate for Plaintiffs to reach a settlement on the terms that were negotiated. *See Kruger v. Novant Health, Inc.*, 2016 WL 6769066, at *5 (M.D.N.C. Sept. 29, 2016) (stating that settlement of a 401(k) class action "benefits the employees and retirees in multiple ways"). One of the chief advantages of the Settlement in this case is that it provides immediate and guaranteed relief to the Class.

## III. THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

In addition to reviewing the substance of the Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the

---

judgment against Plaintiffs); *Putnam Invs., LLC v. Brotherston*, 140 S. Ct. 911, 205 L. Ed. 2d 455 (2020) (denying defendants' petition for certiorari); No. 15-13825, ECF No. 220 (D. Mass. Apr. 29, 2020) (approving plaintiffs' motion for preliminary approval).

settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Administrator will provide notice to the Settlement Class via U.S. Mail. *Settlement Agreement ¶ 2.7.* This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Moreover, the Notice will be supplemented through the Settlement Website and telephone support line. *See supra* at 6. This is more than sufficient to meet the standard under Rule 23, and is consistent with other ERISA settlements that have been approved.[5]

The content of the Notice is also reasonable. The Notice includes, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a description of the claims being released; (5) instructions for submitting a Former Participant Rollover Form (if applicable); (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time, and location of the final approval hearing; (8) contact information for the Settlement Administrator; (9) information regarding Class Counsel and the amount that Class Counsel will seek in Attorneys' Fees; and (10) the proposed service awards be paid from the Settlement Amount. *Settlement Agreement Ex. B.* This Notice is clearly reasonable as it "'fairly apprise[s] the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests." *Graybill*

---

[5] *See, e.g.*, *Brotherston v. Putnam Invs., LLC*, No. 1:15-cv-13825-WGY, ECF No. 220 (D. Mass. April 29, 2020) (approving substantially similar notice plan); *Sims v. BB&T Corp.*, Nos. 1:15–cv–732, 1:15–cv–841, ECF No. 439 (M.D.N.C. Dec. 13, 2018) (same); *Moreno v. Deutsche Bank*, No. 1:15 cv-09936-LGS, ECF No. 335 (S.D.N.Y. Oct. 9, 2018) (same); *Urakhchin II*, 2018 WL 3000490, at *6-7 (same)

*v. Petta Enterprises, LLC,* 2018 WL 4573289, at *3 (S.D. Ohio Sept. 25, 2018) (quoting *Int'l*

*Union,* 497 F.3d at 630 (citation omitted)).

## IV.    THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Finally, the Court should certify the Settlement Class for settlement purposes.[6] The

proposed class is consistent with certified classes in several similar ERISA suits, as it includes all

participants in the Plan except those with fiduciary responsibilities relating to the Plan.[7] This class

easily satisfies the requirements of Rules 23(a) and 23(b)(1).

### A.    The Requirements of Rule 23(a) are Satisfied

Rule 23(a) sets forth four requirements applicable to class actions: (1) numerosity; (2)

commonality; (3) typicality; and (4) adequacy of representation. *Amchem*, 117 S. Ct. at 2245.

Each of these requirements is met here.

#### 1.    Numerosity

Numerosity requires that the number of persons in the proposed class is so numerous that

joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1). This standard is

clearly met for the Settlement Class, as it includes approximately 38,851 persons. *See Amos v.*

*PPG Indus., Inc.,* 2018 WL 5259579, at *5 (S.D. Ohio Jan. 5. 2017) (citing *Taylor v. CSX Transp.,*

---

[6] In the context of a settlement, class certification is more easily attained because the court need not inquire whether a trial of the action would be manageable on a class-wide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

[7] *See, e.g.*, *Wildman v. American Century Servs. LLC*, No. 4:16-737, ECF 153 (W.D. Mo. Dec. 6, 2017) (certifying class of all plan participants and beneficiaries excluding Defendants, members of the board, and "employees with responsibility for the Plan's investment or administrative functions"); *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at 11 (S.D.N.Y Sept. 5, 2017) ("*Moreno II*") (same); *Urakhchin v. Allianz Asset Mgmt. of America, L.P.*, 2017 WL 2655678, at *9 (C.D. Cal. June 15, 2017) (same); *see also Moreno v. Deutsche Bank Americas Holding Corp.*, No. 1:15-cv-09936, ECF No. 347 at ¶ 3 (S.D.N.Y. Mar. 1, 2019) (certifying similar class for settlement purposes); *Urakhchin v. Allianz Asset Mgmt. of America, L.P.*, No. 8:15-cv-1614, ECF No. 176 at 5-6 (C.D. Cal. June 15, 2017) (same).

*Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007) (finding numerosity satisfied at forty proposed class members); *Kelly v. Montgomery Lynch & Assocs., Inc.*, 2007 WL 4562913, at *3 (N.D. Ohio Dec. 19, 2007) (fifty); *see also Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884 at n.1 (6th Cir. 1997) (Objection to numerosity of 1,100 was "frivolous").

### 2. Commonality

Commonality requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(1). "[T]he commonality requirement is typically easily satisfied in ERISA cases." *Shanechian v. Macy's,* 2011 WL 883659, at *3 (S.D. Ohio March 10, 2011). Here, the lawsuit raised numerous common questions, including whether "Defendants' process for assembling and monitoring the Plans' menu of investment options . . . was tainted by a conflict of interest or imprudence and whether Defendants acted imprudently by failing to control recordkeeping expenses." *See Moreno*, 2017 WL 3868803, at *15. Accordingly, the commonality requirement is satisfied. *See, Shirk v. Fifth Third Bancorp*, 2008 WL 4425535, at *2 (S.D. Ohio Sept. 30, 2008) (ERISA case finding commonality as to "whether the Defendants breached their fiduciary duties to the Plan and members of the class, [and] whether the Defendants failed to act prudently and solely in the interest of the Plan and the Plan's participants and beneficiaries").

### 3. Typicality

The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). A class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quotation omitted). This requirement is

satisfied in a breach of fiduciary duty case such as this, which is brought on behalf of the Plan.[8]

*See Shirk*, 2008 WL 4425535, at *3 (citations omitted) ("Generally, there is little doubt that a class representative's breach of fiduciary duty claim is in every respect typical of those of his fellow class members. Typicality is further supported by the fact that ERISA contains unique standing and remedial provisions that allow a participant who sues for a breach of fiduciary duty to obtain plan-wide relief."); *In Re Nortel Networks Corp. ERISA Litig.*, 2009 WL 3294827, at * 8 (M.D. Tenn. Sept. 2, 2009) (the fact that Plaintiffs bring the claims on behalf of the Plan "weigh[s] heavily in a Rule 23(a)(3) analysis of the parties' claims and defenses.").

### 4.    Adequacy

The fourth requirement under Rule 23(a) is that the Class Representatives and counsel "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  For the reasons discussed above, this requirement is satisfied. *See supra* at 10-11.

### B.    The Requirements of Rule 23(b)(1) Are Satisfied

The proposed class also satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

---

[8] Plaintiffs bring this action pursuant to 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee retirement plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct, and to obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. § 1109.  *Am. Compl. ¶ 9.*

Fed. R. Civ. P. 23(b)(1). Cases such as this, which involve allegations of fiduciary breaches to a trust or plan, are precisely the type of cases that are encompassed by the rule. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999) (noting that a breach of trust action is a "classic example" of a Rule 23(b)(1) class); *Dudenhoeffer v. Fifth Third Bancorp*, 2016 WL 9343955, at *2 (S.D. Ohio July 11, 2016) (finding ERISA 401(k) case a "paradigmatic example" of a 23(b)(1) class); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.") (citing cases).

### 1. Rule 23(b)(1)(A)

Certification of the class under Rule 23(b)(1)(A) is proper because prosecution of individual actions would create incompatible standards of conduct for Defendants. The fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively. *See* 29 U.S.C. § 1104(a). Accordingly, "separate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as ... determinations of differing 'prudent alternatives' against which to measure the proprietary investments, or an order that Defendants be removed as fiduciaries." *Ameriprise I,* 304 F.R.D. at 577; *see also Shanehchian v. Macy's, Inc.,* 2011 WL 883659, *9 (S.D. Ohio Mar. 10, 2011) ("If liability is found in one court but not in another, Defendants would be left in limbo, having been vindicated with respect to their duties to the Plans in one court but subject to judgment that would vitiate that vindication in another, thus making compliance impossible."); *Harris v. Koenig,* 271 F.R.D. 383, 394 (D.D.C. 2010); *Kanawi v. Bechtel Corp.,* 254 F.R.D. 102, 111 (N.D. Cal. 2008).

### 2. Rule 23(b)(1)(B)

Likewise, because an adjudication on behalf of one participant of the Plan would effectively be dispositive of the claims of the other class members, class certification is also appropriate under Rule 23(b)(l)(B). *See Moreno*, 2017 WL 3868803, at *8. The Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Note (1966). "[T]his case falls squarely within the meaning articulated by the Advisory Committee as Plaintiff allege[s] breaches of fiduciary duties affecting the Plans and the thousands of participants in the Plans." *Shanehchian,* 2011 WL 883659, at *10. Numerous courts have granted certification under Rule 23(b)(1)(B) in similar cases.[9]

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) preliminarily approve the Settlement; (2) approve the proposed Notice and authorize distribution of the Notice; (3) certify the Settlement Class; (4) schedule a final approval hearing; and (5) enter the accompanying Preliminary Approval Order.

---

[9] *See, e.g.*, *Karg v. Transamerica Corp.*, 2020 WL 3400199 (N.D. Iowa March 25, 2020); *Vellali v. Yale Univ.*, 2019 WL 5204456 (D. Conn. Sept. 24, 2019); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, 2019 WL 2428631 (S.D.N.Y. June 11, 2019); *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018); *Tracey v. MIT*, 2018 WL 5114167 (D. Mass. Oct. 19, 2018); *Henderson v. Emory Univ.*, 2018 WL 6332343 (N.D. Ga. Sept. 13, 2018); *Short v. Brown Univ.*, 320 F. Supp. 3d 363 (D.R.I. 2018); *Clark v. Duke Univ.*, 2018 WL 1801946 (M.D.N.C. Apr. 13, 2018); *Sacerdote v. New York Univ.*, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018); *Daugherty v. Univ. of Chicago*, 2018 WL 1805646 (N.D. Ill. Jan. 10, 2018); *Wildman v. Am. Century Servs., LLC*, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017); *Moreno I*, 2017 WL 3868803, at *8; *Urakhchin I*, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017); *Ameriprise*, 304 F.R.D. at 577; *Shanehchian*, 2011 WL 883659, at *10.

Dated: August 7, 2020     Respectfully Submitted,


**NICHOLS KASTER, PLLP**

By: /s/Kai Richter
Kai H. Richter, MN Bar No. 0296545*
Paul J. Lukas, MN Bar No. 22084X*
Brock J. Specht, MN Bar No. 0388343*
Brandon McDonough, MN Bar No. 0393259*
Ben Bauer, MN Bar No. 0398853*
   * admitted pro hac vice
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
krichter@nka.com
lukas@nka.com
bspecht@nka.com
bmcdonough@nka.com
bbauer@nka.com

**BARKAN MEIZLISH DEROSE WENTZ MCINERNEY PEIFFER,   LLP**

Robert E. DeRose (OH #0055214)
250 E. Broad Street, 10 Floor
Columbus, OH 43215
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com

ATTORNEYS FOR PLAINTIFFS