# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Julie Karpik, Michelle Lewis, Deborah Mondell, Robert Owen, Linda Humenik, Diane George, and Theodore George, individually and as representatives of a class of similarly situated persons, and on behalf of the Huntington Investment and Tax Savings Plan,<br><br>     Plaintiffs,<br><br>v.<br><br>Huntington Bancshares Incorporated, Huntington Bancshares Incorporated Board of Directors, and Huntington Bancshares Incorporated Investment and Administrative Committee,<br><br>     Defendants. | Case No. 2:17-cv-1153-MHW-KAJ<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND EXPENSES, ADMINISTRATIVE COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 9, 2021 at 10:00 a.m., before the Honorable Michael H. Watson, United States District Judge, Joseph P. Kinneary United States Courthouse, 85 Marconi Boulevard, Columbus, Ohio 43215, Plaintiffs Julie Karpik, Michelle Lewis, Deborah Mondell, Robert Owen, Linda Humenik, Diane George, and Theodore George ("Plaintiffs") will and hereby do move this Court for an Order approving the following distributions from the Settlement Fund: (1) attorneys' fees to Class Counsel in the amount of $3,500,000 (one-third of the Settlement Fund); (2) $61,512.35 in litigation expenses that Class Counsel incurred in connection with this action; (3) $107,214 in Administrative Costs associated with the Settlement; and (4) class representative service awards in the amount of $7,500 to each of the named Plaintiffs ($52,500 total).

This motion is made pursuant to Federal Rule of Civil Procedure 23(h) and Article 7 of the Parties' Class Action Settlement Agreement (ECF No. 67-03), and is based on the accompanying Memorandum of Law and authorities cited therein, the Declaration of Kai Richter and exhibits attached thereto, the Declaration of Robert DeRose, the previously filed declarations of the Class Representatives (ECF Nos. 67-07, 67-08, 67-09, 67-10, 67-11, 67-12, 67-13), the Settlement Agreement, and all files, records, and proceedings in this matter.

Counsel for Plaintiffs have conferred with counsel for Defendants regarding this motion and have been advised that Defendants take no position on the motion.

Dated: January 5, 2020                    Respectfully Submitted,

**NICHOLS KASTER, PLLP**

By: /s/Kai Richter
Kai H. Richter, MN Bar No. 0296545*
Paul J. Lukas, MN Bar No. 22084X*
Brock J. Specht, MN Bar No. 0388343*
Ben Bauer, MN Bar No. 0398853*
       * admitted pro hac vice
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
krichter@nka.com
lukas@nka.com
bspecht@nka.com
bbauer@nka.com

**BARKAN MEIZLISH DEROSE WENTZ MCINERNEY PEIFFER, LLP**

Robert E. DeRose (OH #0055214)
250 E. Broad Street, 10 Floor
Columbus, OH 43215
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com

ATTORNEYS FOR PLAINTIFFS
AND THE SETTLEMENT CLASS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEYS' FEES AND EXPENSES, ADMINISTRATIVE COSTS, AND CLASS
REPRESENTATIVE SERVICE AWARDS**

## INTRODUCTION

In light of the Settlement that they have achieved for the participants and beneficiaries of
the Huntington 401(k) ("Plan"),[1] Plaintiffs and their counsel, Nichols Kaster PLLP and Barkan
Meizlish DeRose Wentz McInerny Peifer LLP ("Class Counsel"), respectfully petition the Court
to approve the following distributions from the Settlement Fund: (1) attorneys' fees in the amount
of $3,500,000 (one-third of the Settlement Fund); (2) $61,512.35 in litigation expenses; (3)
$107,214 in Administrative Costs; and (4) service awards of $7,500 to each of the named Plaintiffs.

As discussed below, Class Counsel successfully pursued this complicated ERISA class
action involving one of the country's largest 401(k) plans, and invested significant time and
financial resources on behalf of the Settlement Class. Because of their efforts, Class Counsel have
achieved a Settlement that provides $10.5 million in relief to the Class. To date, Class Counsel
have received no payment for any of their efforts in this litigation, nor have they received
reimbursement for any of the out-of-pocket expenses that they have advanced. All compensation
to Class Counsel is contingent upon the Court's approval of fees and expenses as provided in the
Settlement. Likewise, the named Plaintiffs have not received any compensation for the time they
have invested in the litigation, the benefits they have provided the Settlement Class, or the risks
they undertook in bringing this action.

In similar cases, "courts have found that '[a] one-third fee is consistent with the market
rate' in a complex ERISA 401(k) fee case such as this[.]" *Kruger v. Novant Health, Inc.*, 2016 WL

---

[1] The Plan was formerly known as the Huntington Investment and Tax Savings Plan.

1

6769066, at *2 (M.D.N.C. Sept. 29, 2016);[2] *see also, e.g., Dudenheoffer v. Fifth Third Bancorp*, 2016 WL 8135394, at *1 (S.D. Ohio July 11, 2016) (approving one-third fee in ERISA class case); *Stevens v. SEI Invs. Co.*, 2020 WL 996418, at *14 (E.D. Pa. Feb. 28, 2020) (approving one-third fee to Nichols Kaster, PLLP in ERISA class action); *Sims v. BB&T Corp.*, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) (same); *In re M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-375, ECF No. 190 at ¶ 1 (W.D.N.Y. Sept. 3, 2020) (same); *Clark v. Oasis Outsourcing Holdings Inc.*, No. 18-81101, ECF No. 23 ¶ 1 (S.D. Fla. Dec. 20, 2018) (same); *Andrus v. New York Life Ins. Co.*, No. 16-05698, ECF No. 83 at ¶ 1 (S.D.N.Y. June 15, 2017) (same); *Larson v. Allina Health System*, No. 0:17-cv-03835, ECF No. 132 at ¶¶ 4-5 (D. Minn. May 22, 2020) (same). Likewise, the proposed $7,500 service awards are reasonable compared to those approved in other cases. *See e.g.*, *Clark*, No. 18-81101, ECF No. 23 ¶ 3 (S.D. Fla. Dec. 20, 2018) (approving $7,500 service award to named plaintiffs in ERISA action); *Stevens*, 2020 WL 996418, at *14 (approving $10,000 service award to named plaintiff in ERISA action); *In re M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-00375, ECF No. 190 at ¶ 4 (same); *Andrus*, No. 16-05698, ECF No. 83 at ¶ 4 (same); *see also Sims,* 2019 WL 1993519, at *4 (approving $20,000 service award to each named plaintiff); *Tussey*, 2019 WL 3859763, at *6 (approving $25,000 service award to each named plaintiff); *Kruger*, 2016 WL 6769066, at *6 (same); *Ameriprise*, 2015 WL 4246879, at *3 (same). Finally, the requested expenses are reasonable and typical for a case such as this. Accordingly, Plaintiffs and Class Counsel respectfully request that the Court approve the requested distributions.

---

[2] *See also Krueger v. Ameriprise Fin., Inc.*, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) ("In such cases, courts have consistently awarded one-third contingent fees."); *Tussey v. ABB, Inc.*, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) ("Class Counsel's requested one-third fee is common in these cases.").

## BACKGROUND

### I.   PROCEDURAL HISTORY

#### A.   Pleadings and Motion Practice

Plaintiffs filed their Class Action Complaint on December 29, 2017, alleging that Huntington and related entities breached their fiduciary duties of prudence and loyalty under ERISA by using Huntington-affiliated investments and recordkeeping services for the Plan, and also engaged in transactions prohibited by ERISA. *See ECF No. 1*. Plaintiffs later filed an Amended Complaint that added two additional plaintiffs. *ECF No. 21*. Defendants moved to dismiss, *ECF No. 24*, and the Court issued an order on the motion on September 29, 2019. *ECF No. 53*. In its Order, the Court dismissed the prohibited transaction claims but allowed the breach of fiduciary duty claim to proceed.  *Id.*

#### B.   Discovery, Mediation, and Settlement

During the course of the litigation, the parties engaged in extensive discovery. Defendants produced more than 20,000 pages of documents, and Plaintiffs produced more than 9,000 pages. *Declaration of Kai Richter in Support of Motion for Attorneys' Fees and Expenses, Administrative Costs, and Class Representative Service Awards ("Second Richter Decl.") ¶ 18*. Plaintiffs also subpoenaed five third parties (Mercer Investment Consulting Inc., Towers Watson Delaware, Inc., Federated Investors Inc., Porter, Wright, Morris & Arthur LLP, and Catalyst Capital, LLC) and received over 1,100 pages of documents as a result of the subpoenas. *Id*. In addition, Class Counsel took the depositions of two fact witnesses, and defended the depositions of all seven Plaintiffs. *Id*.

After this discovery was completed, the Parties participated in a mediation with Hunter Hughes III, a nationally respected mediator of ERISA cases and other class actions. *Declaration of Kai Richter in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement*

("*First Richter Decl.*") ¶¶ 14-15.[3] While they did not reach a settlement during the mediation, the parties eventually agreed to a settlement amount recommended by Mr. Hughes. *Id.* After reaching agreement on monetary relief, the parties jointly prepared the comprehensive Settlement Agreement that has been preliminarily approved by the Court. *See ECF Nos. 67-03, 71.*

## II.    SETTLEMENT TERMS AND PRELIMINARY APPROVAL

Under the Settlement, Huntington or its insurers will contribute a gross Settlement Amount of $10.5 million to a common fund (the "Settlement Fund") for the benefit of the Settlement Class. *Settlement Agreement* (*ECF No. 67-03*) ¶ 3.1.[4] After accounting for any attorneys' fees and expenses, Administrative Costs, and class representative service awards approved by the Court, the Distributable Settlement Amount will be allocated to Class Members based on the Plan of Allocation set forth in the Settlement. *Id. at ¶ 3.2(b) & Ex. C.*[5] Current Participants' accounts in the Plan will be automatically credited with their share of the Settlement Fund. *Id.* ¶ 2.8. Former Participants, who do not have an account in the Plan, will receive their payments by check, unless they submit a Rollover Form calling for their payment to be rolled over to an individual retirement

---

[3] Mr. Hughes' biography was previously submitted with Plaintiffs' Motion for Preliminary Approval of the Settlement. *See ECF No. 67-04.*

[4] The Settlement Class is defined as follows:

> [A]ll participants and beneficiaries of the Huntington 401(k) Plan, formerly known as the Huntington Investment and Tax Savings Plan, from December 29, 2011 through October 14, 2020, excluding the Defendants or any Plan participant who is or was a fiduciary to the Plan during the Class Period.

*ECF No. 71 ¶ 5.*

[5] Under the Plan of Allocation, 95% of the Distributable Settlement Amount will be allocated to the Investment Claim (the "Investment Pool") and 5% will be allocated to the Recordkeeping Fee Claim (the "Recordkeeping Pool"). *Id. Ex. C.* The Investment Pool will be allocated among Class Members pro rata based on their quarterly balances invested in Huntington Funds during the Class Period. *Id.* The Recordkeeping Pool will be allocated among Class Members pro rata based on the number of quarters during the Class Period they had an account balance in the Plan, with quarters through the third quarter of 2016 weighted four times more heavily than subsequent quarters. *Id.* This Plan of Allocation is consistent with the claims that were asserted in the action. *Richter Decl.* ¶¶ 4, 7.

4

account or other eligible employer plan. *Id. ¶ 2.7, 3.2 & Ex. C.*[6]

Plaintiffs filed a motion seeking preliminary approval of the Settlement on August 7, 2020. *ECF No. 67.* The Court granted that motion on October 14, 2020. *ECF No. 71.* Plaintiffs are filing the present motion 14 days in advance of the deadline for objections, pursuant to the Court's Preliminary Approval Order. *ECF No. 71 at ¶ 22.* To date, no objections to the Settlement have been received. *Second Richter Decl., ¶ 36.*

## III. WORK OF CLASS COUNSEL

Class Counsel have expended significant time and effort prosecuting this action and achieving the Settlement on behalf of the Settlement Class. To date, the total amount of time invested by Class Counsel is over 1,997 hours, and additional work will be required going forward to implement the Settlement. *Second Richter Decl. ¶¶ 24, 29.* This work is detailed in the accompanying declaration from lead Class Counsel, and is briefly summarized below.

### A. Work Conducted to Date

Prior to filing this action, Class Counsel conducted a thorough investigation of the claims that were asserted and the factual basis for those claims. *Second Richter Decl. ¶ 18.* Thereafter, Class Counsel vigorously prosecuted the action on behalf of the Class. Among other things, Class Counsel (1) drafted a detailed Complaint (ECF No. 1) and Amended Complaint (ECF No. 21); (2) responded to Defendants' motion to dismiss; (3) drafted a comprehensive set of discovery requests; (4) repeatedly met and conferred with Defendants during the course of discovery; (5) reviewed over 20,000 pages of documents produced by Defendants; (6) reviewed over 1,100 pages of documents produced as a result of subpoenas to five third parties (Mercer Investment Consulting

---

[6] To minimize Administrative Costs, disbursements to Former Participants will be subject to a $15 *de minimus* threshold. *Id. ¶ 3.2(d) & Ex. C.* Any individual allocations that do not meet the *de minimus* threshold will be reallocated among eligible Class Members prior to the distribution of funds. *Id. Ex. C.*

Inc., Towers Watson Delaware, Inc., Federated Investors Inc., Porter, Wright, Morris & Arthur LLP, and Catalyst Capital, LLC); (7) produced over 9,000 pages of documents; (8) responded to interrogatories; (9) deposed two fact witnesses; (10) defended the depositions of all seven named Plaintiffs; (11) drafted a memorandum of law in support of class certification;[7] and (12) participated in a mediation with a well-respected mediator. *Second Richter Decl. ¶ 18.*

In addition, Class Counsel have undertaken considerable work in connection with the Settlement. This has included (1) assisting in drafting the Settlement Agreement and exhibits thereto (including the Notice of Settlement, Rollover Form, and the proposed preliminary and final approval orders); (2) preparing Plaintiffs' Preliminary Approval Motion papers; (3) evaluating the bid from the Settlement Administrator; (4) reviewing the final draft of the Notice of Settlement from the Settlement Administrator (Analytics Consulting LLC), and ensuring that it was timely mailed; (5) working with Analytics to create a settlement website and telephone support line; (6) communicating with Class Members; (7) consulting with the Independent Fiduciary regarding its required review of the Settlement;[8] and (8) preparing the present motion. *Id.*

### B.     Remaining Work to Be Performed

Class Counsel's work on this matter remains ongoing. Prior to the Fairness Hearing, Class Counsel will draft Plaintiffs' motion for final approval of the Settlement and respond to any objections. *Id. ¶ 24.* Class Counsel will then attend the Fairness Hearing, and if final approval is granted, supervise the distribution of payments to eligible Class Members. *Id.* In addition, Class Counsel will continue to respond to Class Members' questions and take other actions necessary to support the Settlement until the end of the Settlement Period. *Id.*

---

[7] This motion was not filed with the Court, as the parties reached a settlement before Plaintiffs' deadline to file their motion for class certification.

[8] A release on behalf of a plan is subject to independent fiduciary review under Prohibited Transaction Class Exemption 2003-39, 68 Fed. Reg. 75,632, as amended (Dec. 31, 2003), and Paragraph 2.6 of the Settlement Agreement.

## IV.  WORK OF CLASS REPRESENTATIVES

The class representatives also have worked to advance the interests of the Class Members. Specifically, the class representatives (1) reviewed the operative complaints bearing their names; (2) produced documents and information to Class Counsel prior to suit and during discovery; (3) reviewed and signed answers to interrogatories; (4) appeared for their depositions and prepared for their depositions in advance; (5) made themselves available by phone for the mediation; (6) communicated with Class Counsel during the course of the action; and (7) discussed the Settlement with Class Counsel and reviewed the Settlement Agreement. *Second Richter Decl., ¶ 34; see also ECF Nos. 67-07 to 67-13.*

## V.  WORK OF THE ADMINISTRATOR, ESCROW AGENT, AND INDEPENDENT FIDUCIARY

In order to be administered and effectuated, the Settlement also requires time, resources, and expertise from several non-parties. *See Settlement Agreement ¶¶ 1.17, 1.24, 1.36.*

Analytics, as the approved Settlement Administrator, disseminated the Settlement Notices to Class Members and established the settlement website and telephone support line. *Id. ¶¶ 2.7, 2.10, 2.11; Second Richter Decl. ¶ 30.* Analytics also will review the Rollover Forms submitted by Former Participants, and coordinate distribution of payments to Class Members in the event that the Settlement receives final approval. *Settlement Agreement ¶ 3.2 & Ex. C.*

The Escrow Agent (Alerus) will hold the monies in the Qualified Settlement Fund while approval of the Settlement and distributions to Class Members are pending. *Id. ¶ 3.1* Upon final approval of the Settlement, Alerus will release these funds and execute the investment and tax qualification mandates in the Settlement Agreement. *Id.*

Finally, the Independent Fiduciary will review the Settlement, and independently determine whether it is in the best interest of the Plan to release its claims against Defendants in exchange for the relief provided. *Id. ¶ 2.6.* As noted above, this independent fiduciary review is

7

required by DOL regulations and Paragraph 2.6 of the Settlement Agreement. *See supra* at n.8.

## VI. ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS SOUGHT

In consideration of the work summarized above and associated expenses, Article 7 of the Settlement Agreement provides that Plaintiffs may seek (1) attorneys' fees equal to one-third of the Settlement Fund; (2) reimbursement of reasonable litigation expenses and Administrative Costs; and (3) a $7,500 service award for each Class Representative. *Id. ¶¶ 7.1-7.2.* Consistent with the above, Plaintiffs seek the following amounts in connection with this motion:

- Attorneys' fees: $3,500,000 (one-third of the Gross Settlement Amount)
- Litigation Expenses: $61,512.35
- Administrative Costs: $107,214 (itemized below)
  - Settlement Administrator: $89,714
  - Escrow Agent: $2,500
  - Independent Fiduciary: $15,000
- Class Representative Service Awards: $7,500 each ($52,500 total)

## ARGUMENT

## I. STANDARD OF REVIEW

When counsel obtain a settlement for a class, courts "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, the requested distributions are authorized by applicable law as well as the parties' Settlement Agreement (*see* Background at § VI above).

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Likewise, "reasonable expenses of litigation" may be recovered from a common fund, *see Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970), as well as administrative expenses of settlement, *see Hainey v. Parrott*, 2007 WL 3308027, at *5 n.1 (S.D. Ohio Nov. 6, 2007) (ordering settlement administration expenses to be paid "from the common fund").

Finally, class representative service awards are "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes v. Winking Lizard, Inc.,* 2019 WL 1614822, at *6 (N.D. Ohio Mar. 27, 2019) (awarding $7,500 to named plaintiff) (quoting *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003)); *see also supra* at 2. In summary, the requested distributions are customary in a class action such as this, and should be approved for the reasons set forth below.

## II.    THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES

Courts may use either the "percentage of the fund" method or the "lodestar" method to determine attorneys' fees. *Wright v. Premier Courier, Inc.,* 2018 WL 3966253, at *6 (S.D. Ohio Aug. 17, 2018) (Watson, J.). When attorneys secure a common fund on behalf of a class, the percentage of fund method is preferred. *Koenig v. USA Hockey, Inc*., 2012 WL 12926023, at *10 (S.D. Ohio Jan. 10, 2012) (Watson, J.)  ("[I]n the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.").

For purposes of evaluating the reasonableness of attorneys' fees, courts in the Sixth Circuit consider the following factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Barnes,* 2019 WL 1614822, at *5 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Of these, "[g]enerally, the factor given the greatest emphasis is the size of the fund created[.]'" Manual for Complex Litigation (Fourth), § 14.121 (2004) (quoting 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 14:6, at 547,

550 (4th ed. 2002)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "critical factor is the degree of success obtained").

### A. The Settlement Provides Significant Value to the Class

"To determine the value rendered to the settlement class, the Court should analyze the merits of the case and the risks associated with continued litigation." *Moore v. Aerotek, Inc.,* 2017 WL 2838148, at *6 (S.D. Ohio June 30, 3017) (citation omitted). Here, this factor weights strongly in favor of approval of the requested fee. The recovery compares favorably to settlements in other ERISA cases involving similar claims, and represents a favorable outcome in light of the risks associated with such cases.

The $10.5 million settlement amount represents approximately 0.81% of currently reported Plan assets, and 1.07% of assets reported at the time of Settlement.[9] This is in line with other ERISA 401(k) settlements with banks that have received court approval, such as M&T Bank (0.88%), Deutsche Bank (0.65%), and BB&T (0.52%). *See First Richter Decl. ¶ 6.* Additionally, the settlement represents approximately 30% of the total damages that Plaintiffs claimed were associated with Defendants' alleged fiduciary breaches. *Id.* This also compares favorably with other class action settlements. *See, e.g., Sims,* 2019 WL 1995314, at *5 (approving $24 million ERISA 401(k) settlement that represented 19% of estimated damages in connection with similar claims involving proprietary funds and allegedly excessive recordkeeping expenses); *In re Polyurethane Foam Antitrust Litigation*, 2015 WL 1639269, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide [damages] is an impressive result in view of these possible trial outcomes."); *Mees v. Skreened, Ltd.,* 2016

---

[9] At the time of Plaintiffs' motion for preliminary approval, the Plan reported approximately $983 million in assets in its most recent form 5500 filing with the Department of Labor ("DOL"). *First Richter Decl. ¶ 6.* An updated 5500 filing submitted by the Plan on September 18, 2020 (after Plaintiffs submitted their motion) reported $1,297,000 in assets.

WL 67521, at *5 (S.D. Ohio Jan. 6, 2016), *report and recommendation adopted*, 2016 WL 305166 (S.D. Ohio Jan. 26, 2016) (approving settlement where counsel recovered 25% of alleged damages); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

In the absence of a Settlement, Plaintiffs would have faced significant litigation risks. *See In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009) (noting that the risk of continued litigation includes the risk that there could be no recovery at all); *Shanechian v. Macy's,* 2013 WL 12178108, at *4 (S.D. Ohio June 25, 2013) (noting difficulty of proving both liability and damages at trial in ERISA breach of fiduciary duty suit). These risks are illustrated by two recent trial judgments in favor of the defendants in ERISA breach of fiduciary duty cases involving defined contribution plans. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Sacerdote v. New York Univ.*, 2018 WL 3629598, at (S.D.N.Y. July 31, 2018). Moreover, even if Plaintiffs prevailed on liability, it is "difficult" to measure damages in cases alleging imprudent or otherwise improper investments. *See* Restatement (Third) of Trusts § 100 cmt. b(1). Thus, significant issues would have remained regarding proof of loss. *See Sacerdote*, 328 F. Supp. 3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result.").[10] These risks further underscore the value provided by the Settlement.

---

[10] As a case in point, Class Counsel recently suffered an adverse judgment regarding a loss issue midtrial in an ERISA case against Putnam, later appealed to the First Circuit and prevailed on the same issue, and then settled the case before the trial was completed (following over four years of litigation). *See Brotherston v. Putnam Invs., LLC*, 907 F.3d 17 (1st Cir. 2018) (partly vacating judgment against Plaintiffs); *Putnam Invs., LLC v. Brotherston*, 140 S. Ct. 911, 205 L. Ed. 2d 455

**B.      Rewarding Counsel for their Efforts Promotes Social Goals**

"Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own." *Kritzer v. Safelite Solutions, LLC,* 2012 WL 1945144 (S.D. Ohio May 30, 2012). Here, many Class Members would be unable to bring individual claims due to the complexity and expense of ERISA actions such as this. *See infra* at 15-16. This further weighs in favor of the requested fee. *See Moore*, 2017 WL 2838148, at *8; *Wright,* 2018 WL 3966253, at *7; *Barnes*, 2019 WL 1614822, at *5.

Aside from the benefit to the class itself, actions such as this "promote private enforcement of and compliance with important areas of federal law[.]" *Moore*, 2017 WL 2838148, at *8 (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985)).[11] "[T]he protection of retirement funds is a great public interest" and "private attorneys general have a major role to play in ERISA litigation." *Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*, 2014 WL 5455473, at *9 (S.D.N.Y. Oct. 28, 2014); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009) (noting that Secretary of Labor "depends in part on private litigation to ensure compliance with the statute"). Indeed, suits like this are one of the reasons why fees in 401(k) plans have dropped in recent years. *See 401(k) Fees Continue To Drop*, FORBES (Aug. 20, 2015) (noting that fees have fallen "[i]n part in response to 401(k) fee litigation[.]").[12] These benefits also support the reasonableness of the requested fee. *See Rankin v. Rots*, 2006 WL 1791377, at *2 (E.D. Mich. June 27, 2006) ("[T]here is a public interest in ensuring that attorneys

---

(2020) (denying defendants' petition for certiorari); No. 15-13825, ECF No. 220 (D. Mass. Apr. 29, 2020) (approving plaintiffs' motion for preliminary approval).

[11] *See also Wright,* 2018 WL 3966253, at *7 (noting that actions such as this "have a value to society more broadly...as private law enforcement regimes that free public sector resources") (quoting *Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 287 (6th Cir. 2016)).

[12]   Available at https://www.forbes.com/sites/ashleaebeling/2015/08/20/401k-fees-continue-to-drop/#6b8caf21164f (last visited December 16, 2020).

willing to represent employees in ERISA litigation are adequately paid so that they and others like them will continue to take on such cases.").

### C. The Requested Fee Is a Typical Contingency Fee in ERISA Class Actions

In evaluating the requested fee, it is also important to note that Class Counsel undertook the representation on a contingent fee basis. *See Second Richter Decl. ¶ 22.* Where counsel "invest time, effort, and money over a period of years with no guarantee of recovery" this "weighs in favor of approving the requested fee award." *Wright*, 2018 WL 3966253, at *7 (citing *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litig.*, 268 F.Supp.2d 907, 936 (N.D. Ohio 2003)).

The requested one-third fee in this case is consistent with contingent fee awards in similar ERISA class actions. As the court stated in *Ameriprise*:

> [I]n comparing the requested fee with fee awards in similar cases, the relevant comparators are ERISA class actions asserting breaches of fiduciary duties in the selection and retention of plan investment options and the reasonableness of defined contribution plan fees. ***In such cases, courts have consistently awarded one-third contingent fees***.

2015 WL 4246879, at *2 (emphasis added); *see also Kruger*, 2016 WL 6769066, at *2 ("[C]ourts have found that '[a] one-third fee is consistent with the market rate' in a complex ERISA 401(k) fee case such as this matter.") (citing cases); *Dudenheoffer*, 2016 WL 8135394, at *1. Consistent with this established benchmark, Nichols Kaster has received one-third fee awards in several other ERISA class cases. *See Stevens*, 2020 WL 996418, at *14; *Sims*, 2019 WL 1993519, at *2; *In re M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-375, ECF No. 190 at ¶ 1; *Clark*, No. 18-81101, ECF No. 23 ¶ 1; *Larson*, No. 0:17-cv-03835, ECF No. 132 at ¶¶ 4-5. The Court should follow this established precedent here.[13]

---

[13] A one-third fee is also consistent with the amount that Class Counsel and the Named Plaintiffs agreed upon at the outset of the representation. *See Second Richter Decl. ¶ 33 n.3.* This further supports approval of the fee request. *See Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F.Supp.2d 835, 852 (S.D. Ohio 2014) (Attorneys' fees "may be awarded by the court if they

### D.     The Requested Fee is Reasonable Based on the Time and Labor Expended

The requested fee is also reasonable considering the efforts expended by counsel. As noted above, this case was not resolved until the parties had litigated a motion to dismiss and engaged in extensive discovery. As of the date of this motion, Class Counsel's lodestar is already $1,059,927.11 and additional work remains to be done. *See Second Richter Decl. ¶¶ 22, 24.*[14]

While the requested fee exceeds the lodestar, Class Counsel are entitled to a reasonable multiplier to account for the risks that they assumed in handling the action on a contingent fee basis. *See City of Detroit v. Grinnell*, 495 F.2d 448, 470 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."). Courts in this district award multipliers of "between approximately 2.0 and 5.0" to compensate for this risk. *See Koenig*, 2012 WL 1290623, at *10 (citing *In re Broadwing, Inc. ERISA Litig*, 252 F.R.D. 369, 381 (S.D. Ohio 2006)). The requested fee in this case represents a multiplier of approximately 3.30 and falls well within the reasonable range. *See Dillow v. Home Care Network,*

_____

are 'authorized by law or by the parties' agreement.'") (quoting *Krause v. Rhodes*, 640 F.2d 214, 218 (6th Cir. 1981)); *Devlin v. Ferrandino & Son, Inc.*, 2016 WL 7178338, at *9 (E.D. Pa. Dec. 9, 2016) ("Class Counsel … seeks approval of the contingent fee agreed to when this matter was initiated. This factor supports approval."); *accord Stevens*, 2020 WL 996418, at *12 ("Were this case brought on behalf of an individual, the customary contingency fee would likely range between thirty and forty percent of the recovery. . . . Here, Class Counsel's requested percentage is commensurate with customary percentages in private contingency fee agreements.").

[14] The hourly rates used to calculate Class Counsel's lodestar are "reasonable and are comparable to fees that have been recently approved in [other] ERISA class action[s]". *Sims*, 2019 WL 1993519, at *3 (addressing and approving Nichols Kaster's billing rates). Nichols Kaster's billing rates for ERISA actions range from $625 to $875 per hour for attorneys with more than 10 years of experience, $425 to $575 per hour for attorneys with 10 years or less experience, and $250 per hour for paralegals and clerks. *Second Richter Decl. ¶ 21*. These rates are consistent with (and slightly less than) the rates approved for other experienced ERISA litigators. *See, e.g., Kruger*, 2016 WL 6769066, at *4 (adopting rates of $460 to $998 per hour based on years of experience); *Spano v. Boeing Co.*, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) (same); *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *3 (S.D. Ill. July 17, 2015) (adopting rates of $447 to $974 per hour based on years of experience). Moreover, these rates fall within the range of reported rates for ERISA practitioners in a respected industry survey. *See Second Richter Decl. Ex. 3*.

*Inc.,* 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (citing *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving 3.06 multiplier and citing cases with multipliers ranging from 4.3 to 8.5)); *In re Cardinal Health Inc. Sec. Litig.,* 528 F.Supp.2d 752, 767 (S.D. Ohio 2007) (approving multiplier of 5.9); *Stevens*, 2020 WL 996418, at *13 (approving one-third fee with multiplier of 6.16); *Andrus*, No. 16-05698, ECF No. 74, at p.12 (approving one-third fee with multiplier of 5).

### E. The Complexity of the Action and Experience of Counsel Further Support the Requested Fee

Finally, the complexity of this action and the specialized experience of Class Counsel further support the requested fee. It is well-known that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Ameriprise*, 2015 WL 4246879, at *1; *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty" cases); *Abbott*, 2015 WL 4398475, at *2 (noting that ERSIA 401(k) cases are "particularly complex"). Handling a complex case such as this requires counsel with specialized skills. *See Savani v. URS Prof. Solutions LLC*, 121 F. Supp. 3d 564, 573 (D.S.C. 2015) ("Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate ... class-wide, statutorily-based claims for pension benefits"). In addition to legal expertise, counsel must possess "expertise regarding industry practices." *Kruger*, 2016 WL 6769066, at *3.

Nichols Kaster is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this. *See Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at *11 (S.D.N.Y. Sept. 5, 2017) ("Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans"); *Sims*, 2019 WL 1993519, at *2 (noting Nichols Kaster's

15

strong work on behalf of retirement beneficiaries and skillful litigation). As described in the accompanying declaration of counsel, Nichols Kaster has won favorable pretrial rulings on dispositive motions and/or class certification in over a dozen ERISA cases, recently tried two ERISA class actions, successfully litigated an appeal before the First Circuit, and has negotiated numerous ERISA class action settlements in addition to the present settlement. *Id. ¶¶ 7-8.* Based on their experience, the firm's attorneys have been interviewed by several media outlets in connection with their ERISA work, and Nichols Kaster's undersigned counsel has spoken at multiple national forums on ERISA litigation. *Id. ¶ 9.* Moreover, Nichols Kaster teamed up with another experienced class action firm (Barkan Meizlish DeRose Wentz McInerny Peifer LLP) as local counsel. *See DeRose Decl. ¶¶ 2-3.* The experience of Class Counsel was crucial to the outcome that was obtained, and further supports the requested fee in this case. *See Barnes,* 2019 WL 1614822, at *6 (counsel's experience in similar class actions weighs in favor of fee award).[15]

## III.  THE COURT SHOULD APPROVE THE REQUESTED EXPENSES

In addition to the requested fees, the Court also should approve the requested litigation expenses and Administrative Costs.

### A.  Litigation Expenses

"Under the common fund doctrine, class counsel are entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement[.]" *In re Nat. Century Fin. Enterprises Inc. Inv. Litig.,* 2009 WL 1473975, at *4 (S.D. Ohio May 27, 2009). Thus, courts generally grant requests for expenses that are "normally charged to a fee-paying client, in the course of providing legal services[.]" *Kis v. Covelli Enterprises, Inc.,* 2020 WL 2812405, at *8 (N.D. Ohio May 29, 2020) (quoting *Waldo v. Consumers Energy Co.,*

---

[15] This is particularly so, given that Defendants were represented by two large and well-credentialed law firms (Sidley Austin LLP and Porter, Wright, Morris & Arthur).

16

726 F.3d 802, 827 (6th Cir. 2013) (citation omitted)).

The expenses that may be reimbursed from the common fund encompass all "reasonable expenses necessary to litigate and settle the case." *Wright*, 2018 WL 3966253, at *7. Here, the requested litigation expenses are of a type normally incurred in complex class actions such as this. *See, e.g., Kis,* 2020 WL 2812405, at *8 (approving expenses for photocopying, paralegal expenses, and travel costs); *Wright*, 2018 WL 3966253, at *7 (approving expenses for travel, witness fees, depositions, and transcripts); *Sims*, 2019 WL 1993519, at *4 (approving expenses that "included the costs of hiring experts and consultants, taking depositions, travel, lodging, and parking, copies and communication costs, and mediation and settlement costs, and professional fees, among others"). Moreover, the requested expense amount of $61,512.35 is reasonable in comparison to the amounts awarded in similar cases. *See, e.g., Shanechian,* 2013 WL 12178108, at *5 (approving $435,916 in litigation expenses in ERISA class action); *Sims*, 2019 WL 1993519, at *4 (approving $737,377.68 in expenses); *Ameriprise,* 2015 WL 4246879, at *3 (approving $782,000 in expenses).[16]

### B.    Administrative Costs

The requested Administrative Costs are also reasonable. The Settlement Notice, claims review, and payment distribution services provided by Analytics are essential to carry out the Settlement. The cost of providing those services ($89,714) is reasonable in relation to the size of the class, and comes to only $2.31 per class member. *See Second Richter Decl., ¶ 30.* The Escrow Agent expense of $2,500 is also reasonable in light of the responsibility of handling a $10.5 million fund. Finally, review of the Settlement by the Independent Fiduciary is called for by DOL

---

[16] *See also Tussey*, 2019 WL 3859763, at *6 (approving $2,256,805 in litigation expenses in ERISA class action); *Spano*, 2016 WL 3791123, at *4 (approving $1,813,198.85 in litigation expenses); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (approving $1,563,046.39 in litigation expenses).

regulations, and is deemed to be a "critically important" benefit to plan participants. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 139. Accordingly, the requested settlement administration expenses in the amount of $107,214 should be approved. Both the total amount of these expenses and the underlying components are reasonable and customary in ERISA cases such as this. *See, e.g., In re M&T Bank Corp. ERISA Litig.*, No. 1:16-cv-375, ECF No. 190 at ¶ 3 (approving $91,322 in settlement administration expenses, "including $73,822 to the Settlement Administrator, $2,500 to the Escrow Agent, and $15,000 to the Independent Fiduciary"); *Clark*, No. 18-81101, ECF No. 23 ¶ 2 (approving $157,050 in similar administrative expenses); *Stevens*, 2020 WL 996418, at *14 (approving expenses for settlement administrator, escrow agent, and independent fiduciary).[17]

## IV.   THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS

This Court also should approve the requested service awards of $7,500 per class representative. "Numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes*, 2019 WL 1614822, at *6 (quoting *Hadix,* 322 F.3d at 897. Indeed, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 WL 776933, at *7 (internal citations omitted).

The requested awards in this case are fully consistent with these recognized rationales.  The class representatives invested significant time reviewing case materials (pleadings, interrogatory responses, settlement agreement, etc.), producing documents, appearing for their depositions, and communicating with Class Counsel. *See Second Richter Decl. ¶ 34; ECF Nos. 67-07 to 67-13*

---

[17] The expenses that were approved in *Stevens* for the Escrow Agent ($2,500) and Independent Fiduciary ($15,000) are identical to the amounts sought here. *Id.* Although the expenses of the settlement administrator were lower ($24,936), *id.*, that is because there were only 5,734 class members in that case. *Id.* at *2. Here, there are 38,851 Class Members. *First Richter Decl. ¶ 3.*

(Plaintiffs' declarations). Further, the class representatives assumed both financial risks, *see* 29 U.S.C. § 1132(g) (providing that "the court may allow a reasonable attorney's fee and costs of action to either party"), and reputational risks by suing their current or former employer.[18]

The amount of the requested service awards is also reasonable. *See, e.g. Rotondo v. JPMorgan Chase Bank, N.A.,* 2019 WL 6167086, at *8–9 (S.D. Ohio Nov. 20, 2019), *report and recommendation adopted*, 2019 WL 6496806 (S.D. Ohio Dec. 2, 2019) (approving $20,000 service awards); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express, Inc.*, 2016 WL 5122565, at *7 (S.D. Ohio Sept. 21, 2016) ($25,000); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) ($50,000); *Dillow*, 2018 WL 4776977, at *8 (approving $8,500 service award from $113,224 settlement). Indeed, higher amounts are routinely approved other ERISA class action cases. *See supra* at 2 (citing cases approving awards between $7,500 and $25,000).

## V.    THERE HAVE BEEN NO OBJECTIONS TO THE PROPOSED SETTLEMENT

Finally, it is worth noting that there have been no objections to the distributions allowed under the Settlement as of the date of this motion. The Notice of Settlement that the Court approved explicitly disclosed that Class Counsel and the class representative would seek these distributions. *See ECF No. 67-03 at Ex. B.* In response, no class member out of more than 38,000 has lodged an objection. This further supports the fairness of the Settlement and the reasonableness of the requested distributions. *See In re Nationwide,* 2009 WL 8747486, at *7 (citing *Brotherton v. Cleveland,* 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.") (citation removed); *In re Art*

---

[18] Bringing a lawsuit against an employer relating to management of a 401(k) plan entails risk that the plaintiff will be viewed unfavorably by the employer or future employers. *See Abbott*, 2015 WL 4398475, at *4.

*Materials Antitrust Litig.,* 100 F.R.D. 367, 382 (N.D. Ohio 1983) (strong approval of class members is "nearly dispositive")); *Tussey,* 2019 WL 3859763, at *5 (approving one-third fee, noting that "no class member filed an objection to any portion of the Settlement or Class Counsel's request for attorneys' fees, the reimbursement of expenses, and compensation awards to the Class Representatives.).

## CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court approve the requested distributions.

Dated: January 5, 2020      Respectfully Submitted,

             **NICHOLS KASTER, PLLP**

             By: /s/Kai Richter
             Kai H. Richter, MN Bar No. 0296545*
             Paul J. Lukas, MN Bar No. 22084X*
             Brock J. Specht, MN Bar No. 0388343*
             Ben Bauer, MN Bar No. 0398853*
                * *admitted pro hac vice*
             4700 IDS Center
             80 S 8th Street
             Minneapolis, MN 55402
             Telephone: 612-256-3200
             Facsimile: 612-338-4878
             krichter@nka.com
             lukas@nka.com
             bspecht@nka.com
             bbauer@nka.com

             **BARKAN MEIZLISH DEROSE WENTZ MCINERNEY PEIFFER,   LLP**

             Robert E. DeRose (OH #0055214)
             250 E. Broad Street, 10 Floor
             Columbus, OH 43215
             Telephone: (614) 221-4221
             Facsimile: (614) 744-2300
             bderose@barkanmeizlish.com

             ATTORNEYS FOR PLAINTIFFS
             AND THE SETTLEMENT CLASS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on this 5th day of January, 2021, that the undersigned electronically filed and served the foregoing document through this Court's ECF system.

*/s/ Kai Richter*
Kai Richter
