# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| Julie Karpik, Michelle Lewis, Deborah Mondell, Robert Owen, Linda Humenik, Diane George, and Theodore George, individually and as representatives of a class of similarly situated persons, and on behalf of the Huntington Investment and Tax Savings Plan,<br><br>Plaintiffs,<br><br>v.<br><br>Huntington Bancshares Incorporated, Huntington Bancshares Incorporated Board of Directors, and Huntington Bancshares Incorporated Investment and Administrative Committee,<br><br>Defendants. | Case No. 2:17-cv-1153-MHW-KAJ<br><br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 9, 2021 at 10:00 a.m., before the Honorable Michael H. Watson, Plaintiffs Julie Karpik, Michelle Lewis, Deborah Mondell, Robert Owen, Linda Humenik, Diane George, and Theodore George ("Plaintiffs") will and hereby do move this Court for an Order granting final approval of the Parties' proposed Class Action Settlement Agreement. This motion is made pursuant to Federal Rule of Civil Procedure 23, this Court's Preliminary Approval Order dated October 14, 2020 (*ECF No. 71*), and Article 2.5 of the Parties' Class Action Settlement Agreement (*ECF No. 67-03*), and is based on the accompanying Memorandum of Law and authorities cited therein, the declarations of Kai Richter and Jeffrey Mitchell and exhibits attached thereto, the Settlement Agreement, and all files, records, and proceedings in this matter. A proposed Final Approval Order is being submitted in connection with this motion. Defendants do not oppose the motion as parties to the Settlement Agreement.

Dated: January 25, 2020                     Respectfully Submitted,


**NICHOLS KASTER, PLLP**

By: _/s/Kai Richter_____
Kai H. Richter, MN Bar No. 0296545*
Paul J. Lukas, MN Bar No. 22084X*
Brock J. Specht, MN Bar No. 0388343*
Ben Bauer, MN Bar No. 0398853*
         * *admitted pro hac vice*
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
krichter@nka.com
lukas@nka.com
bspecht@nka.com
bmcdonough@nka.com
bbauer@nka.com

**BARKAN MEIZLISH DEROSE WENTZ
MCINERNEY PEIFFER,   LLP**

Robert E. DeRose (OH #0055214)
250 E. Broad Street, 10 Floor
Columbus, OH 43215
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com

ATTORNEYS FOR PLAINTIFFS

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### INTRODUCTION

On October 14, 2020, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiffs' claims against Defendants under the Employee Retirement Income Security Act ("ERISA") relating to the Huntington 401(k) Plan[1] (the "Plan").[2] *ECF No. 71*. The Court found on a preliminary basis that "the Settlement Agreement is sufficiently within the range of reasonableness to warrant preliminary approval[,]" and approved the distribution of notice to the class as specified in the Settlement Agreement. *Id. ¶¶ 4, 8.*

This Court should now grant final approval of the Settlement. As discussed below, all of the criteria for final approval are satisfied, and events following this Court's Preliminary Approval Order confirm that the Court's earlier analysis was correct. First, an Independent Fiduciary reviewed the Settlement and confirmed that the "terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone." *Declaration of Kai Richter in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Third Richter Decl.") Ex. A*. Second, the class notice was sent to more than 38,000 class members, and none of the Class Members objected to the Settlement (and the deadline to file any objections has passed). *Id. ¶ 4*. The fact that "the proposed Settlement enjoys the unanimous support of the Class Members" strongly weighs "in favor of approving the proposed settlement." *In re Broadwing, Inc.*

---

[1] The Huntington 401(k) Plan was formerly known as the Huntington Investment and Tax Savings Plan.
[2] Unless otherwise specified, all capitalized terms have the meaning assigned to them in Article 1 of the Parties' Settlement Agreement, which appears on the docket at ECF No. 67-03.

*ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006). Accordingly, Plaintiffs respectfully request that the Court grant their motion for final approval of the Settlement.

## BACKGROUND

### I.  PROCEDURAL HISTORY[3]

#### A.  Pleadings and Court Proceedings

Plaintiffs filed their Class Action Complaint on December 29, 2017, alleging that Defendants breached their fiduciary duties of prudence and loyalty under ERISA by selecting and retaining Huntington-affiliated investments and excessively-costly recordkeeping services for the Plan, and engaged in transactions prohibited by ERISA. *See ECF No. 1*. Plaintiffs later filed an Amended Complaint that added two additional plaintiffs. *ECF No. 21*. Defendants moved to dismiss, *ECF No. 24*, and the Court denied Defendants' motion as to Plaintiffs' breach of fiduciary duty claims on September 29, 2019. *ECF No. 53*.[4]

#### B.  Discovery, Mediation, and Settlement

During the course of the litigation, the Parties engaged in extensive discovery. Defendants produced more than 20,000 pages of documents, and the Class Representatives produced more than 9,000 pages. *Declaration of Kai Richter in Support of Motion for Attorneys' Fees and Costs, and Class Representative Service Awards ("Second Richter Decl.") ¶ 18.* Plaintiffs also subpoenaed five third parties (Mercer Investment Consulting Inc., Towers Watson Delaware, Inc., Federated Investors Inc., Porter, Wright, Morris & Arthur LLP, and Catalyst Capital, LLC) and

---

[3] The procedural history of the litigation was previously recounted in Plaintiffs' briefing in support of their motion for preliminary approval of the Settlement (*ECF No. 68*) and their pending motion for attorneys' fees, expenses, and class representative service awards (*ECF No. 72*). For ease of reference, Plaintiffs have recounted that history here.

[4] The Court dismissed the prohibited transaction claims. *Id.*

received over 1,100 pages of documents as a result of the subpoenas. *Id*. In addition, Class Counsel took the depositions of two fact witnesses, and defended the depositions of all seven Plaintiffs. *Id.*

After this discovery was completed, the Parties participated in a mediation with Hunter Hughes III, a nationally respected mediator with experience in ERISA class actions. *Id.*[5] Although the Parties did not reach a settlement during the mediation session, they eventually agreed to a settlement amount recommended by Mr. Hughes. *See Declaration of Kai Richter in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("First Richter Decl.") ¶ 15.* After reaching agreement on monetary relief, the Parties then negotiated and prepared the comprehensive Settlement Agreement that is the subject of this motion. *Id.*

### C. Settlement Terms

Under the Settlement, Huntington or its insurers have agreed to contribute a gross Settlement Amount of $10.5 million to a settlement fund (the "Settlement Fund") for the benefit of the Settlement Class.[6] *ECF No. 67-03 ("Settlement Agreement") ¶¶ 3.1.* After accounting for any attorneys' fees, costs and expenses, and class representative service awards approved by the Court, the remaining sum (the "Distributable Settlement Amount") will be distributed to eligible Class Members.

The Plan of Allocation provides that 95% of the Distributable Settlement Amount is allocated to the Investment Claim (the "Investment Pool") and 5% allocated to the Recordkeeping Fee Claim (the "Recordkeeping Pool"). *Id. Ex. C.* This approximates the relative proportion of

---

[5] Mr. Hughes' bio was previously submitted with Plaintiffs' Motion for Preliminary Approval of the Settlement. *See ECF No. 67-04.*

[6] The Settlement Class is defined as follows:

[A]ll participants and beneficiaries of the Huntington 401(k) Plan, formerly known as the Huntington Investment and Tax Savings Plan, from December 29, 2011 through October 14, 2020, excluding the Defendants or any Plan participant who is or was a fiduciary to the Plan during the Class Period.

*ECF No. 71 ¶ 5.*

3

damages that Plaintiffs claimed in connection with each type of claim. *Richter Decl. ¶¶ 4, 7.* Consistent with the claims that were asserted, the Investment Pool will be allocated among Class Members pro rata based on their quarterly balances invested in Huntington Funds during the Class Period. *Settlement Agreement, Ex. C.* The Recordkeeping Pool will be allocated among Class Members pro rata based on the number of quarters during the Class Period they had an account balance in the Plan, with quarters through the third quarter of 2016 weighted four times more heavily than subsequent quarters. *Id.* This weighting is also consistent with the claims that were asserted, as recordkeeping costs declined after the third quarter of 2016. *See First Richter Decl. ¶ 4.*

The settlement calls for automatic distribution of monies to class members. Current Participants' accounts in the Plan will be automatically credited with their share of the Settlement Fund. *Settlement Agreement ¶ 2.8.* Former Participants, who do not have an account in the Plan, will receive automatic distributions by check (they do not have to make a claim), and will have the opportunity to submit a Rollover Form allowing them to have their distribution rolled over into an individual retirement account or other eligible employer plan. *Id. ¶ 2.7, 3.2 & Ex. C.* Former Participants who do not timely submit a Rollover Form will be sent a check payable individually to them. *Id. Ex. C.*[7]

In exchange for this relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties" as defined in the Settlement) from all claims that "have been asserted in this litigation or which could have been asserted based on the same factual

---

[7] To minimize Administrative Costs, disbursements to Former Participants will be subject to a $15 *de minimus* threshold, as is common in these types of cases. *Id. ¶ 3.2(d) & Ex. C.* However, any individual allocations that do not meet the *de minimus* threshold will be reallocated among eligible Class Members prior to the distribution of funds. *Id. Ex. C.* Any checks that remain uncashed three months after the distribution of funds will revert to the Qualified Settlement Fund and will be paid to the Plan for the purpose of defraying administrative expenses. *Id. ¶ 3.4.*

predicate as those Claims," or that "would have been barred by res judicata had the Action been fully litigated to a final judgment." *Id. ¶ 1.33.*

## II.    PRELIMINARY APPROVAL OF SETTLEMENT

Plaintiffs filed a motion seeking preliminary approval of the Settlement on August 7, 2020. *ECF No. 67.* The Court granted the motion for preliminary approval on October 14, 2020. *ECF No. 71.* In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes and found that the terms of the Settlement were sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed settlement to the Settlement Class. *Id. ¶¶ 4-5.* In addition, the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, distribute the Notices, and carry out the other administrative duties specified by the Settlement Agreement. *Id. ¶ 18.*

## III.   CLASS NOTICE AND REACTION TO SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed the approved Class Notice (and Former Participant Rollover Form, if applicable) to each of the Settlement Class Members identified by the Plan's recordkeepers. *See Declaration of Jeff Mitchell ("Mitchell Decl."), ¶¶ 7-10.*[8] In total, 38,846 Notices were mailed, including 20,920 Notices to Current Participants and 17,926 Notices to Former Participants. *Id ¶ 9.*

Prior to sending these Notices, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address ("NCOA") database. *Id. ¶ 8.* In the event that any Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided, and performed a skip trace in an attempt to ascertain a valid address for

---

[8] Defendants also caused Analytics to send the required CAFA notices to federal and state authorities on August 14, 2020, and filed a notice with the court confirming their compliance. *See ECF No. 69*; *Mitchell Decl. ¶ 6.*

the class member in the absence of a forwarding address. *Id. ¶¶ 12-13.* As a result, the notice program was very effective. Out of 38,846 Notices that were mailed, only approximately 1.1% were ultimately undeliverable despite these efforts. *Id. ¶ 14.*

In the event that any class members desired further information, Analytics established a settlement website at www.huntingtonerisasettlement.com. *Id. ¶ 15.* Among other things, the settlement website included: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Deadlines" page, each containing clear notice of applicable deadlines; (3) a "Court Documents" page, which includes case and settlement documents for download (including the Notice, Rollover Form, Settlement Agreement, Preliminary Approval Order, and Plaintiff's Motion for Approval of Attorney's Fees and Expenses, Administrative Costs, and Class Representative Awards, and related documents; and (4) email, phone, and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained a toll-free telephone support line (1-833-710-1515) as a resource for Class Members seeking information about the Settlement. *Id. ¶ 16.* This telephone number was referenced in the Notice, and also appears on the settlement website. *Id.*

The deadline to file objections to the Settlement was January 19, 2020. *ECF No. 71 ¶¶ 15-16.* That deadline has now passed, and there have been no objections to the Settlement. *See Third Richter Decl. ¶ 4*; *Mitchell Decl. ¶ 17.*

**IV. REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY**

Pursuant to Paragraph 2.6 of the Settlement Agreement and applicable guidance from the Department of Labor,[9] the Settlement was reviewed on behalf of the Plan by an Independent Fiduciary (Fiduciary Counselors) following the Court's preliminary approval order. *See Third*

---

[9] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

*Richter Decl. Ex. A*. After reviewing the Settlement and other case documents, interviewing counsel for each of the Parties, and conducting other due diligence (including comparing the settlement amount to other similar cases), the Independent Fiduciary concluded that: (1) "The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone"; (2) "The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances"; and, (3) "The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest." *Id. at 1*. Accordingly, the Independent Fiduciary "approve[d] and authorize[d] the Settlement on behalf of the Plan in accordance with Prohibited Transaction Exemption 2003-39 ("PTE 2003-39")." *Id.*

## ARGUMENT

### I.   LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. Fed. R. Civ. P. 23(e)(2). "In deciding whether to approve the proposed settlement, the Court must consider whether the settlement is "'fair, reasonable, and adequate.'" *Ganci v. MBF Inspection Servs., Inc.*, 2019 WL 6485159, at *3 (S.D. Ohio Dec. 3, 2019). (quoting Fed. R. Civ. P. 23(e)).

Federal Rule of Civil Procedure 23(e)(2) identifies four factors considered in making such determination: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors overlap significantly with the more detailed list of factors that courts in this Circuit have typically used for purposes of reviewing the fairness of a proposed class action settlement

(the "*UAW* factors"): (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *See Ball v. Kasich,* 2020 WL 1969289, at \*5 (S.D. Ohio Apr. 24, 2020) (citing *Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. ("UAW") v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). The purpose of the Rule 23(e)(2) factors is to "focus the court … on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee note (2018).

As discussed below, both the Rule 23(e)(2) factors and the *UAW* factors overwhelmingly favor approval of the Settlement in this case. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement.[10]

## II.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Recovery Provided by the Settlement Is Fair, Reasonable and Equitable

As the Independent Fiduciary noted in its Report, the recovery provided by the Settlement "[is] reasonable in light of the Plans' likelihood of full recovery, the risks and costs of litigation, and the value of claims foregone." *Third Richter Decl. Ex. A.* The $10,500,000 monetary recovery is substantial not only in the aggregate, but also as a percentage of Plan assets (.81% of currently reported assets; 1.07% of assets reported at time of settlement). *First Richter Decl. ¶ 6; Third Richter Decl. Ex. A at 7.*[11] This is consistent with other ERISA 401(k) settlements with banks that have received court approval, such as M&T Bank (0.88%), Deutsche Bank (0.65%), and BB&T

---

[10] The Sixth Circuit "generally favors the settlement of complex class actions." *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 903 (S.D. Ohio 2001) (citations omitted).

[11] The Plan's 2019 Form 5500s were filed after Plaintiffs moved for preliminary approval.

(0.52%). *First Richter Decl. ¶ 6.*

Moreover, the settlement represents a significant portion of the damages that Plaintiffs claimed were caused by Defendants' alleged fiduciary breaches. *Id.   ¶ 7.* Plaintiffs calculated the following losses in preparation for mediation:

- <u>Investment Claim Losses</u> : $33.7 million
- <u>Recordkeeping Claim Losses</u>: $1.25 million

*Id.* The $10.5 million recovery represents approximately 30% of the total damages that Plaintiffs claimed were associated with Defendants' alleged fiduciary breaches. *Id.* This also compares favorably to other class action settlements. *See, e.g., Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving $24 million ERISA 401(k) settlement that represented 19% of estimated damages); *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *In re Polyurethane Foam Antitrust Litigation*, 2015 WL 1639269, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that equates to roughly 18 percent of the best-case-scenario classwide [damages] is an impressive result in view of these possible trial outcomes."); *Mees v. Skreened, Ltd.,* 2016 WL 67521, at *5 (S.D. Ohio Jan. 6, 2016), *report and recommendation adopted*, 2016 WL 305166 (S.D. Ohio Jan. 26, 2016) (approving settlement where counsel recovered 25% of alleged damages); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Finally, the recovery will be distributed equitably to class members pursuant to a Plan of Allocation that is based on the claims that were asserted in the action. *See supra* at 3-4. The

Independent Fiduciary found "the Plan of Allocation to be reasonable" and "consistent with Plaintiffs' claims[.]" *Third Richter Decl. Ex A at 6*.

### B.  Continued Litigation Would Have Entailed Significant Risk

If Plaintiffs had continued to litigate the case, they would have faced significant litigation risk. *See In re Nationwide Fin. Servs. Litig.,* 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009) (noting that the risk of continued litigation includes the risk that there could be no recovery at all). While Plaintiffs believe that their case was strong, "the merits of the Class's case are not so overwhelming that continued litigation is a vastly better option than settlement." *In re: Whirlpool Corp.,* 2016 WL 5338012, at *11. In two recent ERISA breach of fiduciary duty cases involving defined contribution plans, the defendants were the prevailing party. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Sacerdote v. New York Univ.*, 2018 WL 3629598, at (S.D.N.Y. July 31, 2018).

Even if Plaintiffs established a fiduciary breach, it is "difficult" to measure damages in cases alleging imprudent or otherwise improper investments. *See* Restatement (Third) of Trusts § 100 cmt. b(1); *see also Shanechian v. Macy's,* 2013 WL 12178108, at *4 (S.D. Ohio June 25, 2013) (noting difficulty of proving both liability and damages at trial in ERISA breach of fiduciary duty class action even where Plaintiffs prevailed on motion to dismiss and class certification). Thus, significant issues would have remained regarding proof of loss. *See Sacerdote*, 328 F. Supp. 3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes— including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that … the Plans suffered losses as a result.").[12]

---

[12] As another case in point, Class Counsel recently suffered an adverse judgment regarding a loss issue midtrial in an ERISA case, later appealed to the First Circuit and prevailed on the same issue, and then settled the case before the trial was completed (following over four years of litigation). *See Brotherston v. Putnam Invs., LLC* (1st Cir. 2018) (partly vacating judgment

These risks further support final approval of the Settlement.

### C. ERISA Class Cases Are Complex, Expensive, and Often Lengthy

Regardless of the eventual outcome, continuing the litigation would have resulted in complex and costly additional proceedings, which would have significantly delayed any relief to class members. These considerations also support approval of the Settlement.

"'Generally, [m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'" *Ganci*, 2019 WL 6485159, at *3 (quoting *Wright v. Premier Courier, Inc.*, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018)) (quotation omitted). The complexity inherent in class actions is amplified in ERISA class actions. It is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise*, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERSIA 401(k) cases are "particularly complex"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."). In fact, it is not unusual for ERISA 401(k) cases to extend for a decade or longer before final resolution. *See Tussey v. ABB Inc.*, 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017) (requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott*, 2015 WL 4398475, at *4 (noting that the case had originally been filed on "September 11, 2006").

This case already has been pending for over three years. Absent a settlement, Plaintiffs

---

against Plaintiffs); *Putnam Invs., LLC v. Brotherston*, 140 S. Ct. 911, 205 L. Ed. 2d 455 (2020) (denying defendants' petition for certiorari); No. 15-13825, ECF No. 220 (D. Mass. Apr. 29, 2020) (approving plaintiffs' motion for preliminary approval).

would have needed to pursue the litigation through class certification, expert discovery, summary judgment, trial, and potentially an appeal. *See Barnes,* 2019 WL 1614822, at *2 (N.D. Ohio Mar. 26, 2019) ("If this case was not resolved by settlement and continued to be litigated through summary judgment motions, decertification/class action certification motions, trial, and possible appeals, there is no guarantee Plaintiffs would have prevailed on these disputes."). "Settlement avoids a huge consumption of resources of the parties and the Court." *In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.,* 2016 WL 5338012, at *10 (N.D. Ohio Sept. 23, 2016).

> **D.    The Settlement Is the Product of Arm's Length Negotiations Conducted After Adequate Discovery and Adversarial Motion Practice**

In this Circuit, "Courts presume the absence of fraud or collusion" in reaching a settlement "unless there is evidence to the contrary." *Stanley v. Turner Oil & Gas Properties, Inc.*, 2018 WL 2928028, at *5 (S.D. Ohio June 12, 2018). Accordingly, Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery. *See Koenig*, 2012 WL 12926023, at *4 ("Based on the pleadings filed, as well as the discovery and mediation efforts, the Parties have a clear view of the strengths and weaknesses of their cases.") (citation omitted). That is precisely the situation presented here. At all times, the parties negotiated at arm's length. *See First Richter Decl., ¶ 14-15.* Moreover, the parties engaged in extensive formal discovery, including both written discovery and depositions, before engaging in mediation with an experienced, neutral mediator, and were further informed by the Court's ruling on the motion to dismiss. This gave the parties a clear view of the facts and law, and the strengths and weaknesses of their case. *See Ball*, 2020 WL 1969289, at *6 (citing numerous cases indicating that arms-length negotiations between well-informed parties demonstrates lack of fraud or collusion).

Courts in this district have approved settlements where the proceedings were far less advanced. *See In re Nationwide,* 2009 WL 8747486, at *4 (approving settlement before motion to

dismiss); *Barnes,* 2019 WL 1614822, at *3 (approving settlement before any motion practice where parties had conducted only informal discovery); *Moore v. Aerotek, Inc.,* 2017 WL 2838148, at *4 (S.D. Ohio June 30, 2017), *report and recommendation adopted*, 2017 WL 3142403 (S.D. Ohio July 25, 2017 (approving settlement where parties did not complete any formal discovery); *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 557 (S.D. Ohio 2000) (same); *see also Mees v. Skreened, Ltd.*, 2016 WL 67521, at *3 (S.D. Ohio Jan 26., 2016) (finding discovery adequately informed counsel where parties exchanged "thousands of pages" of documents but had yet to depose any witnesses). Based on the extensive record that was developed and the stage of the proceedings, there is no question that the parties had sufficient information to evaluate settlement. Further, the adversarial nature of the litigation and the involvement of a third-party mediator underscore that the parties dealt with each other at arm's length.

### E. Class Counsel and the Class Representatives Support the Settlement, as do the Independent Fiduciary and Class Members

The positive response that the Settlement has received from numerous stakeholders, including Class Counsel, the Class Representatives, absent class members, and the Independent Fiduciary, further supports approval the Settlement.

"The Sixth Circuit has stated that 'court[s] should defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs.'" *Ball*, 2020 WL 1969289, at *7 (quoting *Williams v. Vuokovich*, 720 F.2d 909, 920 (6th Cir. 1983) (citations omitted)). Here, Class Counsel is experienced in similar ERISA class actions,[13] and has concluded

---

[13] "Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans." *Moreno v. Deutsche Bank Americas Holding Corp.*, 2017 WL 3868803, at 11 (S.D.N.Y Sept. 5, 2017); *see also Declaration of Kai Richter in Support of Plaintiffs' Motion for Approval of Attorneys' Fees and Expenses, Administrative Costs, and Class Representative Service Awards ("Second Richter Decl."),* ¶¶ 7-9 (setting forth extensive experience of Class Counsel in ERISA class action cases).

13

that the settlement is fair, reasonable, and adequate. *See Third Richter Decl. ¶ 2; First Richter Decl. ¶ 8*. This supports approval of the Settlement. *See Shanechian*, 2013 WL 12178108, at *5 (counsel's experience in similar ERISA class actions and recommendation to approve ERISA settlement supports final approval). Moreover, the Class Representatives previously submitted declarations in support of the Settlement. *See ECF Nos. 67-07 to 67-13*. Their support also favors approval.  *See Ball*, 2020 WL 1969289, at *7.  Both Class Counsel and the Class Representatives have been determined to be adequate to represent the class. *See ECF No. 71 at ¶ 7*.

The reaction of the absent class members also has been positive.  As noted above, there have been no objections to the Settlement from the 38,846 class members who were sent a Notice of Settlement. *See Third Richter Decl. ¶ 4*. The lack of objections "indicates that the Class supports the Settlement." *In re Broadwing Inc. ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006) (Watson, J.) (citation omitted); *Wess v. Storey*, 2011 WL 1463609, at *6 (S.D. Ohio Apr. 14, 2011) (Watson, J.) (citation omitted).

Further, after completing the review required by Paragraph 2.6 of the Settlement Agreement and applicable guidance from the Department of Labor (*see supra* at 6 n.9), the Independent Fiduciary, acting on behalf of the Plan, approved the "Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery," finding them to be reasonable. *See Third Richter Decl. Ex. A at 1*. This additionally supports approval of the settlement.

## F.     The Settlement Serves the Public Interest

Finally, settlement of a complex class action such as this serves the broader public interest. "Settlements of complicated cases typically meet this factor because 'there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are

notoriously difficult and unpredictable and settlement conserves judicial resources.'" *Ball*, 2020 WL 1969289, at *8 (quoting *Déjà Vu Servs.*, 925 F.3d at 899). Consistent with this public interest rationale, the Settlement "provides relief for a substantial number of class members, avoids further litigation, and frees the Court's judicial resources." *In re: Whirlpool Corp.*, 2016 WL 5338012, at *12 (quoting *Stinson v. Delta Mgmt. Assocs.*, 302 F.R.D. 160, 165 (S.D. Ohio 2014)). Indeed, the public interest factor is particularly compelling here because of the nature of this ERISA action.[14]

In the absence of a class action such as this, many Class Members would be unable to bring individual claims due to the complexity and expense of ERISA actions. Indeed, "[i]n filing this case, Plaintiff[s] and Class Counsel 'took on a difficult case that an individual Class Member would almost certainly never file on their own' and 'obtained recovery on a class-wide basis for an alleged injury that, but for this litigation, would almost certainly have gone uncompensated.'" *Barnes*, 2019 WL 1614822, *4 (quoting *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010)). This settlement ensures that each Class Member receives relief for the alleged misconduct, which further promotes approval of the settlement.

---

[14] Actions such as this "promote private enforcement of and compliance with important areas of federal law[.]" *Moore*, 2017 WL 2838148, at *8 (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 310 (1985)); *see also Wright,* 2018 WL 3966253, at *7 (noting that actions such as this "have a value to society more broadly…as private law enforcement regimes that free public sector resources") (quoting *Gascho v. Global Health Fitness Holdings, LLC,* 822 F.3d 269, 287 (6th Cir. 2016)). Specifically, "the protection of retirement funds is a great public interest" and "private attorneys general have a major role to play in ERISA litigation." *Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*, 2014 WL 5455473, at *9 (S.D.N.Y. Oct. 28, 2014); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009) (noting that Secretary of Labor "depends in part on private litigation to ensure compliance with the statute"). Suits like this are one of the factors that have led to significantly lower fees for of 401(k) plan participants in recent years. *See 401(k) Fees Continue To Drop*, FORBES (Aug. 20, 2015) (noting that fees have fallen "[i]n part in response to 401(k) fee litigation[.]"), available at https://www.forbes.com/sites/ashleaebeling/2015/08/20/401k-fees-continue-to-drop/#6b8caf21164f (last visited December 16, 2020).

### III.    THE CLASS NOTICE WAS REASONABLE

The class notice program also was reasonable and satisfied the requirements of Rule 23 and Due Process. The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here.

As noted above, the Settlement Administrator sent the Court-approved Settlement Notices to each of the class members via U.S. Mail. *See supra* at 5. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Further, the record reflects that approximately 98.9% of Settlement Notices were successfully delivered. *See Mitchell Decl. ¶ 14*. This confirms the effectiveness of the notice program. *See Michel v. WM Healthcare Sols., Inc.*, 2014 WL 497031, at *4 (S.D. Ohio Feb. 7, 2014) (notice reaching 86.6% of class was reasonable); *Wright*, 2018 WL 3966253, at *5 (notice reaching 97% of class members was reasonable).

The content of the Notice also was reasonable. The Notice included, among other things: (1) a summary of the lawsuit; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Settlement; (4) a disclosure of the release of claims; (5) instructions for how Former Participants may submit Rollover Forms (if they so elect); (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time, and location of the Fairness Hearing; (8) contact information for the Settlement Administrator; and (9) information regarding Class Counsel and the amount of attorneys' fees that they would seek. *See Mitchell Decl. Ex. 1*. These Notices were previously approved by the Court, *see ECF No. 71 ¶ 8*, and "'fairly apprise[] the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the

settlement serves their interests." *Graybill v. Petta Enterprises, LLC,* 2018 WL 4573289, at *3 (S.D. Ohio Sept. 25, 2018) (quoting *UAW,* 497 F.3d at 630 (citation omitted)). This is more than sufficient to meet the Rule 23 standard.

Notably, no Settlement Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the settlement website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

## IV.    THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS

In its Order for Preliminary Approval of the Settlement, the Court preliminarily certified the following Settlement Class:

> All participants and beneficiaries of the Huntington 401(k) Plan, formerly known as the Huntington Investment and Tax Savings Plan, from December 29, 2011 through October 14, 2020, excluding the Defendants or any Plan participant who is or was a fiduciary to the Plan during the Class Period.

*ECF No. 71.* In their memorandum of law in support of preliminary approval, Plaintiffs established that: (1) the class was sufficiently numerous; (2) Plaintiffs raised common issues in the Amended Complaint; (3) Plaintiffs' claims are typical of other class members' claims; (4) Plaintiffs are adequate class representatives; (5) Class Counsel is experienced and competent; (6) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(B) because any individual adjudication would be dispositive of the interests of other class members. *ECF No. 68 at 16-20*; *see also Dudenhoeffer v. Fifth Third Bancorp*, 2016 WL 9343955, at *2 (S.D. Ohio July 11, 2016) (finding ERISA 401(k) case a "paradigmatic example" of a 23(b)(1) class). Nothing has changed since the Court preliminarily certified the class for preliminary approval. Accordingly, the Court should reaffirm its approval of Settlement Class.

17

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant final approval of the Settlement and enter the accompanying proposed order.

Dated: January 25, 2020                Respectfully Submitted,

**NICHOLS KASTER, PLLP**

By: /s/Kai Richter
Kai H. Richter, MN Bar No. 0296545*
Paul J. Lukas, MN Bar No. 22084X*
Brock J. Specht, MN Bar No. 0388343*
Ben Bauer, MN Bar No. 0398853*
         *admitted pro hac vice*
4600 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
krichter@nka.com
lukas@nka.com
bspecht@nka.com
bmcdonough@nka.com
bbauer@nka.com

**BARKAN MEIZLISH DEROSE WENTZ
MCINERNEY PEIFFER, LLP**

Robert E. DeRose (OH #0055214)
250 E. Broad Street, 10 Floor
Columbus, OH 43215
Telephone: (614) 221-4221
Facsimile: (614) 744-2300
bderose@barkanmeizlish.com

ATTORNEYS FOR PLAINTIFFS

18

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies on this 25th day of January, 2021, that the undersigned electronically filed and served the foregoing document through this Court's ECF system.

*/s/ Kai Richter*
Kai Richter
