# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Julie Karpik, *et al.*,

    Plaintiffs,

    v.

Huntington Bancshares Inc., *et al.*,

    Defendants.

Case No. 2:17-cv-1153

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

Plaintiffs Julie Karpik, Michelle Lewis, Deborah Mondell, Robert Owen, Linda Humenik, Diane George, and Theodore George ("Plaintiffs"), individually and as representatives of similarly situated persons, and on behalf of the Huntington 401(k) Plan,[1] and Defendants Huntington Bancshares Incorporated, the Huntington Bancshares Incorporated Board of Directors, and the Huntington Bancshares Incorporated Investment and Administrative Committee ("Defendants"), have entered into a Settlement Agreement intended to resolve this case.  Plaintiffs filed an Unopposed Motion seeking final approval of the proposed class action settlement as described in the parties' Settlement Agreement and to enter final judgment in this action.  ECF No. 73.  Plaintiffs also move for attorney's fees and expenses, administrative costs, and Class

---

[1] The Huntington 401(k) Plan was formerly known as the Huntington Investment and Tax Savings Plan.

Representative Service Awards.  ECF No. 72.  No objection or opposition was filed to either of these motions.

For the following reasons, the Court **GRANTS** final approval of the proposed settlement and **GRANTS** the request for attorney's fees and expenses, administrative costs, and Class Representative service awards.

## I. BACKGROUND

### A.    Procedural History

Plaintiffs filed their Class Action Complaint on December 29, 2017, alleging that: (1) Defendants breached their fiduciary duties of prudence and loyalty under ERISA by selecting and retaining Huntington-affiliated investments (the "Investment Claim") and by allowing the Plan to be charged unreasonably costly fees for recordkeeping services (the "Recordkeeping Fee Claim"); and (2) Defendants engaged in transactions prohibited by ERISA.  Compl, ECF No. 1. Plaintiffs later filed an Amended Complaint that asserted the same claims but added two additional plaintiffs.  ECF No. 21.  Defendants moved to dismiss, ECF No. 24, and on September 29, 2019, the Court granted in part and denied in part that motion, allowing Plaintiffs' breach of fiduciary duty claims to proceed but dismissing the prohibited transactions claims.  Op. & Order, ECF No. 53.

During the course of the litigation, the Parties engaged in extensive discovery.  Defendants produced more than 20,000 pages of documents, and the Class Representatives produced more than 9,000 pages.  See ECF No. 72-01 ¶ 18.  Plaintiffs also subpoenaed five third parties (Mercer Investment Consulting

Inc., Towers Watson Delaware, Inc., Federated Investors Inc., Porter, Wright, Morris & Arthur LLP, and Catalyst Capital, LLC) and received over 1,100 pages of documents as a result of the subpoenas. *Id.* In addition, Defendants deposed each of the seven plaintiffs, and Plaintiffs deposed two of Defendants' employees. *Id.*

After this discovery was completed, the Parties participated in a mediation with Hunter Hughes III, a nationally respected mediator with experience in ERISA class actions. *Id.* Although the Parties did not reach a settlement during the mediation session, they eventually agreed to a settlement amount recommended by Mr. Hughes. *See* ECF No. 67-02 ¶ 15. After agreeing on monetary relief, the Parties then negotiated and prepared the comprehensive Settlement Agreement that is the subject of this Order. *Id.*

### B.   Settlement Terms[2]

Under the Settlement, Huntington or its insurers have agreed to contribute a gross Settlement Amount of $10.5 million to a settlement fund (the "Settlement Fund") for the benefit of the Settlement Class.[3] ECF No. 67-03 ¶¶ 3.1. After accounting for any attorneys' fees, costs and expenses, and class representative

---

[2] Unless otherwise defined herein, capitalized terms have the same meaning as ascribed to them in the Settlement Agreement. *See* ECF No. 67-03.
[3] The Settlement Class is defined as follows:
   [A]ll participants and beneficiaries of the Huntington 401(k) Plan, formerly known as the Huntington Investment and Tax Savings Plan, from December 29, 2011 through October 14, 2020, excluding the Defendants or any Plan participant who is or was a fiduciary to the Plan during the Class Period.
ECF No. 71 ¶ 5.

service awards approved by the Court, the remaining sum (the "Distributable Settlement Amount") will be distributed to eligible Class Members.

The Plan of Allocation provides that 95% of the Distributable Settlement Amount is allocated to the Investment Claim (the "Investment Pool") and 5% is allocated to the Recordkeeping Fee Claim (the "Recordkeeping Pool"). *Id.* Ex. C. This approximates the relative proportion of damages that Plaintiffs claimed in connection with each type of claim. ECF No. 67-02 ¶¶ 4, 7. Consistent with the claims that were asserted, the Investment Pool will be allocated among Class Members pro rata based on their quarterly balances invested in Huntington Funds during the Class Period. ECF No. 67-03, Ex. C. The Recordkeeping Pool will be allocated among Class Members pro rata based on the number of quarters during the Class Period they had an account balance in the Plan, with quarters through the third quarter of 2016 weighted four times more heavily than subsequent quarters. *Id.* This weighting is also consistent with the claims that were asserted, as recordkeeping costs declined after the third quarter of 2016. ECF No. 67-02 ¶ 4.

The Settlement calls for automatic distribution of monies to class members without the need to file a claim. Current Participants' accounts in the Plan will be automatically credited with their share of the Settlement Fund. ECF No. 67-03 ¶ 2.8. Former Participants, who do not have an account in the Plan, will receive automatic distributions by check (again, they do not have to make a claim), and will have the opportunity to submit a Rollover Form allowing them to have their

distribution rolled over into an individual retirement account or other eligible employer plan. *Id.* ¶ 2.7, 3.2 & Ex. C. Former Participants who do not timely submit a Rollover Form will be sent a check payable individually to them. *Id.* Ex. C.

In exchange for this relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties" as defined in the Settlement) from all claims that "have been asserted in this litigation or which could have been asserted based on the same factual predicate as those Claims" or that "would have been barred by res judicata had the Action been fully litigated to a final judgment." *Id.* ¶ 1.33.

## C. Preliminary Approval of Settlement

Plaintiffs filed a motion seeking preliminary approval of the Settlement on August 7, 2020. ECF No. 67. The Court granted the motion for preliminary approval on October 14, 2020. ECF No. 71. In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes and found that the terms of the Settlement were sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed settlement to the Settlement Class. *Id.* ¶¶ 4–5. In addition, the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, with responsibility to distribute the Notices and carry out the other administrative duties specified by the Settlement Agreement. *Id.* ¶ 18.

### D. Class Notice and Reaction to Settlement

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed the approved Class Notice (and Former Participant Rollover Form, if applicable) to each of the Settlement Class Members identified by the Plan's recordkeepers. *See* ECF No. 73-03 ¶¶ 7–10.[4] In total, 38,846 Notices were mailed, consisting of 20,920 Notices to Current Participants and 17,926 Notices to Former Participants. *Id.* ¶ 9.

Prior to sending these Notices, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address ("NCOA") database. *Id.* ¶ 8. In the event that any Notices were returned, Analytics re-mailed the Notice to any forwarding address that was provided and performed a skip trace in an attempt to ascertain a valid address for the class member in the absence of a forwarding address. *Id.* ¶¶ 12-13. As a result, the notice program was very effective. Out of 38,846 Notices that were mailed, only approximately 1.1% were ultimately undeliverable. *Id.* ¶ 14.

In the event that any class members desired further information, Analytics established a settlement website at www.huntingtonerisasettlement.com. *Id.* ¶ 15. Among other things, the settlement website included: (1) a "Frequently Asked Questions" page containing a clear summary of essential case

---

[4] Defendants also caused Analytics to send the required CAFA notices to federal and state authorities on August 14, 2020, and filed a notice with the court confirming their compliance. *See* ECF No. 69; ECF No. 73-03. ¶ 6.

information; (2) a "Home" page and "Important Deadlines" page, each containing clear notice of applicable deadlines; (3) a "Court Documents" page, which included case and settlement documents for download (including the Notice, Rollover Form, Settlement Agreement, Preliminary Approval Order, and Plaintiff's Motion for Approval of Attorney's Fees and Expenses, Administrative Costs, and Class Representative Awards); and (4) email, phone, and U.S. mail contact information for Analytics. *Id.* In addition, Analytics created and maintained a toll-free telephone support line (833-710-1515) as a resource for Class Members seeking information about the Settlement. *Id.* ¶ 16. This telephone number was referenced in the Notice and also appears on the settlement website. *Id.*

The deadline to file objections to the Settlement was January 19, 2020. ECF No. 71 ¶¶ 15–16. There were no objections to the Settlement. *See* ECF No. 73-01 ¶ 4; ECF No 73-03 ¶ 17.

### E. Review and Approval by Independent Fiduciary

Pursuant to Paragraph 2.6 of the Settlement Agreement and applicable guidance from the Department of Labor,[5] the Settlement was reviewed on behalf of the Plan by an Independent Fiduciary following the entry of the Court's preliminary approval order. *See* ECF No. 73-02. After reviewing the Settlement and other case documents, interviewing counsel for each of the Parties, and conducting other due diligence (including comparing the settlement amount to

---

[5] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

other similar cases), the Independent Fiduciary concluded that: (1) "The Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery, are reasonable in light of the Plan's likelihood of full recovery, the risks and costs of litigation, and the value of claims forgone"; (2) "The terms and conditions of the transaction are no less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances"; and, (3) "The transaction is not part of an agreement, arrangement or understanding designed to benefit a party in interest." *Id.* at 1. Accordingly, the Independent Fiduciary "approve[d] and authorize[d] the Settlement on behalf of the Plan in accordance with Prohibited Transaction Exemption 2003-39 ("PTE 2003-39")." *Id.*

## II. APPROVAL OF THE CLASS SETTLEMENT

When deciding whether to approve a proposed settlement, the Court must consider whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, the Court considers the following factors:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 244 (6th Cir. 2011) (citations and internal quotation marks omitted). The Court

"enjoys wide discretion in assessing the weight and applicability of these factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992).

For the following reasons, the Court concludes that the Settlement is fair, adequate, and reasonable.

### A.    The Risk of Fraud or Collusion

In this Circuit, "Courts presume the absence of fraud or collusion" in reaching a settlement "unless there is evidence to the contrary." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) (citing *In re Rio Hair Naturalizer*, MDL No. 1055, 1996 U.S. Dist. LEXIS 20440, *43 (E.D. Mich. Dec. 20, 1996)). Accordingly, Courts consistently approve class action settlements reached through arms-length negotiations after meaningful discovery. *See Koenig v. USA Hockey*, No. 2:09-cv-1097, 2012 WL 12926023, at *4 (S.D. Ohio Jan. 10, 2012) ("Based on the pleadings filed, as well as the discovery and mediation efforts, the Parties have a clear view of the strengths and weaknesses of their cases.") (citation omitted). That is the situation presented here. At all times, the parties negotiated at arm's length. ECF No. 67-02 ¶ 14-15. Moreover, the parties engaged in extensive formal discovery, including both written discovery and depositions, before engaging in mediation with an experienced, neutral mediator, and were further informed by the Court's ruling on the motion to dismiss. This gave the parties a clear view of the facts and law and the strengths and weaknesses of their case. *See Ball v. Kasich*, No. 2:16-cv-282, 2020 WL 1969289, at *6 (S.D. Ohio Apr. 24, 2020) (citing numerous cases indicating that

arms-length negotiations between well-informed parties demonstrates lack of fraud or collusion).

The Court finds there is no evidence—or even a suggestion—that the Settlement was the product of fraud or collusion and concludes that this factor favors approval of the Settlement.

**B.    Complexity, Expense, and Likely Duration of the Litigation**

Generally, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Ganci v. MBF Inspection Servcs., Inc.*, No. 2:15-cv-2959, 2019 WL 6485159, at *3 (S.D. Ohio Dec. 3, 2019) (quoting *Wright v. Premier Courier, Inc.,* No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018)) (quotation omitted). The complexity inherent in class actions is amplified in ERISA class actions. Indeed, it is well-recognized that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Krueger v. Ameriprise*, No. 11-cv-02781, 2015 WL 4246879, at *1 (D. Minn. July 13, 2015); *see also Abbott v. Lockheed Martin Corp.*, No. 06-cv-701-MJR-DGW, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (noting that ERSIA 401(k) cases are "particularly complex"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 138 (S.D.N.Y. 2010) ("Many courts have recognized the complexity of ERISA breach of fiduciary duty actions."). In fact, it is not unusual for ERISA 401(k) cases to extend for a decade or longer before final resolution. *See Tussey v. ABB Inc.,* No. 2:06-cv-04305-NKL, 2017 WL 6343803, at *3 (W.D. Mo. Dec. 12, 2017)

(requesting proposed findings more than ten years after suit was filed on December 29, 2006); *Tibble v. Edison Int'l*, No. CV 07-5359 SVW (AGRx), 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining remaining issues ten years after suit was filed on August 16, 2007); *Abbott*, 2015 WL 4398475, at *3 (noting that the case had originally been filed on "September 11, 2006").

Here, this litigation has been pending for over three years. Nevertheless, substantial hurdles exist, and considerable work remains, before the Class may be in a position to obtain judgment on the merits. Absent a settlement, Plaintiffs would have needed to pursue the litigation through class certification, expert discovery, summary judgment, trial, and potentially an appeal. *See Barnes v. Winking Lizard, Inc.,* No. 1:18CV952, 2019 WL 1614822, at *2 (N.D. Ohio Mar. 26, 2019) ("If this case was not resolved by settlement and continued to be litigated through summary judgment motions, decertification/class action certification motions, trial, and possible appeals, there is no guarantee Plaintiffs would have prevailed on these disputes."). "Settlement avoids a huge consumption of resources of the parties and the Court." *In re: Whirlpool Corp. Front-loading Washer Prod. Liab. Litig.,* No. 1:08-WP-65000, 2016 WL 5338012, at *10 (N.D. Ohio Sept. 23, 2016). The Court finds that this complexity, along with the potential risk, cost, and additional delay, strongly favors approval of this Settlement, which secures an immediate, substantial benefit for the Class Members.

## C.    The Amount of Discovery Engaged in By the Parties

To confirm that the Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court must consider the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). In this case, the Parties engaged in extensive discovery (including written discovery, third-party discovery, production of over 30,000 documents, and nine depositions) and motion practice (litigating a motion to dismiss). Both sides have collected ample evidence to evaluate the strengths and weaknesses of their case. Based on the extensive record that was developed and the stage of the proceedings, there is no question that the parties had sufficient information to determine whether the Settlement was fair and reasonable under the circumstances.

The Court finds that both sides made well-informed decisions to enter into the Settlement. This factor weighs in favor of approving the proposed Settlement.

## D.    The Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek*, 636 F.3d at 245 (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

If Plaintiffs had continued to litigate the case, they would have faced significant litigation risk. *See In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-00249, 2009 WL 8747486, at *4 (S.D. Ohio Aug. 19, 2009) (noting that the risk of continued litigation includes the risk that there could be no recovery at all). In two recent ERISA breach of fiduciary duty cases involving defined contribution plans, the defendants were the prevailing party. *See Wildman v. Am. Century Servs., LLC*, 362 F. Supp. 3d 685 (W.D. Mo. 2019); *Sacerdote v. New York Univ.*, No. 16-cv-6284 (KBF), 2018 WL 3629598 (S.D.N.Y. July 31, 2018). Here, Defendants had presented certain defenses to the asserted claims, similar in nature to those that had been asserted in *Wildman*.

Even if Plaintiffs established a fiduciary breach, it is "difficult" to measure damages in cases alleging imprudent or otherwise improper investments. *See* Restatement (Third) of Trusts § 100 cmt. b(1); *see also Shanechian v. Macy's*, No. 1:07-cv-828, 2013 WL 12178108, at *4 (S.D. Ohio June 25, 2013) (noting difficulty of proving both liability and damages at trial in ERISA breach of fiduciary duty class action even where Plaintiffs prevailed on motion to dismiss and class certification). Thus, significant issues would have remained regarding proof of loss, even if Plaintiffs could have established Defendants' liability, which was by no means certain. *See Sacerdote*, 328 F. Supp. 3d at 280 (finding that "while there were deficiencies in the Committee's [fiduciary] processes—including that several members displayed a concerning lack of knowledge relevant to the Committee's mandate—plaintiffs have not proven that . . . the Plans suffered

losses as a result").

Because an adverse ruling on either liability or damages would significantly impact the Class, the likelihood of success in this case was materially uncertain. In summary, "the merits of the Class's case are not so overwhelming that continued litigation is a vastly better option than settlement." *In re: Whirlpool Corp.,* 2016 WL 5338012, at \*11.  When these material risks are balanced against the substantial benefits provided by the Settlement, this factor weighs strongly in favor of approving the proposed Settlement.

### E.    The Opinions of Class Counsel and Class Representatives

Class Counsel are skilled in class actions and ERISA litigation, and their recommendation that the Court should approve the Settlement is entitled to some deference.  *Ball*, 2020 WL 1969289, at \*7 ("The Sixth Circuit has stated that 'court[s] should defer to the judgment of experienced counsel who [have] competently evaluated the strength of [their] proofs.'") (quoting *Williams v. Vuokovich*, 720 F.2d 909, 922 (6th Cir. 1983) (citations omitted)).  Here, "Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans." *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936 (LGS), 2017 WL 3868803, at \*11 (S.D.N.Y Sept. 5, 2017); *see also* ECF No. 72-01 ¶¶ 7-9 (setting forth extensive experience of Class Counsel in ERISA class action cases).  Class Counsel have concluded that this Settlement is not only fair and reasonable, but that it confers substantial benefits to the Class.  Moreover, the Class Representatives

previously submitted declarations in support of the Settlement. *See* ECF Nos. 67-07 to 67-13. Their support also favors approval. *See Ball*, 2020 WL 1969289, at *7.

Further, after completing the review required by Paragraph 2.6 of the Settlement Agreement and applicable guidance from the Department of Labor (*see supra* at 6 n.5), the Independent Fiduciary, acting on behalf of the Plan, approved the "Settlement terms, including the scope of the release of claims, the amount of cash received by the Plan and the amount of any attorneys' fee award or any other sums to be paid from the recovery," finding them to be reasonable. *See* ECF No. 73-02 at 1. The Court finds that this factor also favors approval of the Settlement.

**F.    The Reaction of Absent Class Members**

The Court must also consider the reaction of the absent class members. *Poplar Creek*, 636 F.3d at 244; *In re Broadwing*, 252 F.R.D. at 376. Here, individual notice was sent by mail to the 38,846 Class Members. *See* ECF No. 73-04 ¶ 9. No objections were filed. ECF No. 72-02 ¶ 4. This creates the inference that all or most of the Class Members had no concerns about the proposed settlement. This positive response from the Settlement Class weighs strongly in favor of approving the settlement. *See, e.g., In re Broadwing*, 252 F.R.D. at 376.

### G.    The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citations omitted). In this case, the Settlement confers immediate benefits on the Class Members, avoids the risks and expense of further litigation, and conserves judicial resources. Additionally, this ERISA Settlement confers broader public benefits, as "the protection of retirement funds is a great public interest" and "private attorneys general have a major role to play in ERISA litigation." *Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*, No. 12cv8918 (DLC), 2014 WL 5455473, at *9 (S.D.N.Y. Oct. 28, 2014); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 n.8 (8th Cir. 2009) (noting that the Secretary of Labor "depends in part on private litigation to ensure compliance with the statute"). The Court therefore finds that this factor favors approving the Settlement.

In sum, after considering all the relevant factors, the Court concludes that the Settlement provides a substantial benefit to the Settlement Class, and is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

### III. APPROVAL OF SETTLEMENT COSTS

### A.    Attorney's Fees

Plaintiff's counsel seeks a fee of $3,500,000, which equals one-third of the $10.5 million Settlement Fund. ECF No. 72. No Class Member has objected to this request, and Defendant also took no position on this request.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Rule 23 authorizes a court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. P. 23(h). Named Plaintiffs' successful pursuit of this action can also support an award of reasonable attorney's fees. *See Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974) (citing *Mills v. Electric Auto— Lite Co.*, 396 U.S. 375 (1970)).

District courts apply a two-part analysis to assess the reasonableness of an attorney fee petition. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the court must determine the appropriate method to calculate the fees, using either the percentage of fund or the lodestar approach. *Id.* Whichever method is utilized, the United States Court of Appeals for the Sixth Circuit requires "only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d at 516. Second, the Court must consider six factors to assess the reasonableness of the fee. *See Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009).

Here, the Court is applying the percentage of the fund method. *See, e.g., Gascho v. Global Health Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (indicating that the district court must make a "clear statement" as to which

calculation method is being applied); *see also Kimber Baldwin Designs, LLC v.*

*Silt' Commc'n, Inc.*, No. 1:16-cv-448, 2017 WL 5247538, at *14 (S.D. Ohio Nov.

13, 2017) (Black, J.) ("In the Southern District of Ohio, the preferred method is to

award a reasonable percentage of the fund, with reference to the lodestar and

the resulting multiplier." (internal citations and quotations omitted)).  Accordingly,

the Court will consider the following factors in determining whether the fee

request is reasonable under the circumstances:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value
> of the services on an hourly basis; (3) whether the services were
> undertaken on a contingent fee basis; (4) society's stake in rewarding
> attorneys who produce such benefits in order to maintain an incentive
> to others; (5) the complexity of the litigation; and (6) the professional
> skill and standing of counsel involved on both sides.

*Moulton*, 581 F.3d at 352.

Under the circumstances of this specific case, particularly where neither

the Independent Fiduciary nor any Class Member oppose the fee request (and

Defendants took no position), and the Class has received a substantial benefit,

the Court concludes that all of these factors weigh in favor of approving the

requested award of attorney's fees.

As to the first factor, the Court has already described the benefit conferred.

The $10.5 million recovery is in line with settlements in other ERISA cases

involving similar claims and represents a fair and reasonable outcome in light of

the substantial risks associated with such cases.  The $10.5 million settlement

amount represents approximately 0.81% of currently reported Plan assets, and

1.07% of assets reported at the time of Settlement.[6]  This is in line with other

ERISA 401(k) settlements that have received court approval.  *See* ECF No. 67-

02 ¶ 6.  Additionally, the settlement represents approximately 30% of the total

damages that Plaintiffs claimed at the mediation were associated with

Defendants' alleged fiduciary breaches.  *Id.*  This is also consistent with other

class action settlements.  *See, e.g., Sims v. BB&T Corp.*, No. 1:15-cv-732, 2019

WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving $24 million ERISA 401(k)

settlement that represented 19% of estimated damages in connection with similar

claims involving proprietary funds and allegedly excessive recordkeeping

expenses); *In re Polyurethane Foam Antitrust Litigation*, No. 1:10 MD 2196,

2015 WL 1639269, at *5 (N.D. Ohio Feb. 26, 2015) ("A settlement figure that

equates to roughly 18 percent of the best-case-scenario classwide [damages] is

an impressive result in view of these possible trial outcomes."); *Mees v.

Skreened, Ltd.*, No. 2:14-cv-142, 2016 WL 67521, at *5 (S.D. Ohio Jan. 6,

2016), *report and recommendation adopted*,  2016 WL 305166 (S.D. Ohio Jan.

26, 2016) (approving settlement where counsel recovered 25% of alleged

damages); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715

(E.D. Pa. 2001) (noting that since 1995, class action settlements have typically

"recovered between 5.5% and 6.2% of the class members' estimated losses").

---

[6] At the time of Plaintiffs' motion for preliminary approval, the Plan reported approximately $983 million in assets in its most recent form 5500 filing with the Department of Labor ("DOL").  ECF No. 67-02. ¶ 6.  An updated 5500 filing submitted by the Plan on September 18, 2020 (after Plaintiffs submitted their motion) reported $1,297,000,000 in assets.

This factor therefore weighs in favor of approving the requested award.

Second, although not required, a cross-check using Class Counsel's lodestar amount also weighs in favor of granting the requested fee award of $3,500,000. Class Counsel spent over 1,997 hours litigating this case for a lodestar calculation of $1,059,927.11. *See* ECF No. 72-01 ¶¶ 19, 22. The requested fee of $3,500,000 corresponds with a 3.3 lodestar multiplier. Because of the inherent risks of litigation, courts in this district award multipliers of "between approximately 2.0 and 5.0." *See Koenig*, 2012 WL 1290623, at *10 (citing *In re Broadwing*, 252 F.R.D. at 381). The 3.30 multiplier falls well within the reasonable range. *See Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (citing *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving 3.06 multiplier and citing cases with multipliers ranging from 4.3 to 8.5)); *In re Cardinal Health*, 528 F.Supp.2d at 767 (approving multiplier of 5.9). The Court finds that Class Counsel's hourly rates are reasonable under the circumstances of this particular case. Accordingly, this factor weighs in favor of granting the requested fee.

Third, Class Counsel represents that they took on this case pursuant to a contingency fee agreement. In doing so, Class Counsel assumed a real risk in taking the case, investing time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award. *See, e.g., In re Sulzer Hip Prosthesis and Knee Prosthesis Liability*

*Litig.*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Absent this class action, most individual claimants would lack the resources to litigate a case of this magnitude.")

The Court next considers whether the fourth factor, society's stake in rewarding attorneys who produce such benefits, militates in favor of an award of the requested attorney's fees. Class actions such as this "have a value to society more broadly, both as deterrents to unlawful behavior—particularly when the individual injuries are too small to justify the time and expense of litigation— and as private law enforcement regimes that free public sector resources." *Gascho*, 822 F.3d at 287. Without a class action, the individual plaintiffs would not have had a strong incentive to pursue recovery because any monetary award would have been severely outweighed by the costs to litigate their cases. *See Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 WL 2838148, at *8 (S.D. Ohio June 30, 2017); *Wright,* 2018 WL 3966253, at *7; *Barnes*, 2019 WL 1614822, at *5.

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, also militate in favor of granting the requested award. It is well known that "ERISA is a complex field that involves difficult and novel legal theories and often leads to lengthy litigation." *Ameriprise*, 2015 WL 4246879, at *1; *see also In re Marsh*, 265 F.R.D. at 138 ("Many courts have recognized the complexity of ERISA breach of

fiduciary duty" cases); *Abbott*, 2015 WL 4398475, at *2 (noting that ERSIA 401(k) cases are "particularly complex"). The same is true here.

Handling a complex case such as this requires counsel with specialized skills. *See Savani v. URS Prof. Solutions LLC*, 121 F. Supp. 3d 564, 573 (D.S.C. 2015) ("Very few plaintiffs' firms possess the skill set or requisite knowledge base to litigate . . . class-wide, statutorily-based claims for pension benefits"). In addition to legal expertise, counsel must possess "expertise regarding industry practices." *Kruger v. Novant Health*, No. 1:14CV208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016). To that end, Class Counsel is one of the relatively few firms in the country that has the experience and skills necessary to successfully litigate a complex ERISA action such as this. ECF No. 72-01 ¶¶ 7-9; *see also Moreno*, 2017 WL 3868803, at *11 ("Plaintiffs' counsel are experienced litigators who serve as class counsel in ERISA actions involving defined-contribution plans"). As discussed above, the hours expended and time records submitted by Class Counsel further underscore their competency and efficient handling of this matter, favoring approval. Moreover, the experience of Class Counsel likely led to the outcome in this case and further supports the requested fee in this case. *See Barnes,* 2019 WL 1614822, at *6 (counsel's experience in similar class actions weighs in favor of fee award). This is particularly so given that Defendants were represented by two large and well-respected law firms with substantial experience defending ERISA class actions (Sidley Austin LLP and Porter, Wright, Morris & Arthur).

For all of these reasons, the Court concludes that these factors favor approval of the fee award of $3,500,000 to Class Counsel.

## B. Litigation Expenses

"Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims, and in obtaining settlement, including [but not limited to] expenses incurred in connection with document productions, consulting with [and deposing] experts . . ., travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 535 (E.D. Mich. 2003).

Class Counsel avers that out-of-pocket expenses, which amount to $61,512.35, were necessary and directly related to this litigation. ECF No. 72-01 ¶ 26. The requested expense amount is reasonable in comparison to the amounts awarded in similar cases. *See, e.g., Shanechian,* 2013 WL 12178108, at *5 (approving $435,916 in litigation expenses in ERISA class action); *Sims,* 2019 WL 1993519, at *4 (approving $737,377.63 in expenses); *Ameriprise,* 2015 WL 4246879, at *3 (approving $782,000 in expenses). The Court finds that all of these costs were reasonable and necessary to litigate and settle this case and therefore approves the request of $61,512.35 for litigation expenses.

## C. Settlement Administration Costs

The Settlement Notice, claims review, and payment distribution services provided by the Settlement Administrator are essential to carry out the Settlement. The cost of providing those services ($89,714) is reasonable in

relation to the size of the class and comes to only $2.31 per class member. *See* ECF No. 72-01 ¶ 30. The Escrow Agent expense of $2,500 is also reasonable in light of the responsibility of handling a $10.5 million fund. Finally, review of the Settlement by the Independent Fiduciary (which reasonably charged $15,000 for its services) is called for by DOL regulations and is deemed to be a "critically important" benefit to plan participants. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 139. Accordingly, the Court approves the $107,214 requested in Settlement administration costs.

### D. Class Representative Service Awards

Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). Notably, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dilworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotation marks and citations omitted).

Here, Plaintiffs propose an award of $7,500 to each of the Class Representatives bringing and pursuing this action. ECF No. 72-01 ¶ 35. The Class Representatives invested significant time reviewing case materials (pleadings, interrogatory responses, settlement agreement, etc.), producing

documents, appearing for their depositions, and communicating with Class

Counsel. *Id.* ¶ 34. These efforts have resulted in a substantial benefit to the

Class, and the $7,500 is reasonable when compared with other awards in this

district. *See, e.g. Rotondo v. JPMorgan Chase Bank, N.A.,* No. 2:19-cv-2328,

2019 WL 6167086, at *8–9 (S.D. Ohio Nov. 20, 2019), *report and*

*recommendation adopted,* 2019 WL 6496806 (S.D. Ohio Dec. 2, 2019)

(approving $20,000 service awards); *Owner-Operator Indep. Drivers Ass'n, Inc.*

*v. Arctic Express, Inc.,* No. 97-cv-750, 2016 WL 5122565, at *7 (S.D. Ohio Sept.

21, 2016) ($25,000); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.,*

137 F.R.D. 240, 251 (S.D. Ohio 1991) ($50,000); *Dillow,* 2018 WL 4776977, at *8

(approving $8,500 service award from $113,224 settlement). In light of their

service, and the substantial benefit provided to the Class, the Court approves

service awards of $7,500 to each of the Class Representatives.

## III. APPROVAL OF CLASS CERTIFICATION FOR SETTLEMENT

To grant final approval of a settlement class, Rule 23 must be satisfied.

*See* Fed. R. Civ. P. 23. This Court has already preliminarily approved the Class

for settlement purposes, ECF No 71, and now finds that the standards required

for final approval are satisfied.

### A.    Numerosity

Numerosity is presumed when there are at least 40 class members.

*Adams v. Anheuser-Busch Companies, Inc.,* No. 2:10-cv-826, 2012 WL

1058961, at *3–4 (S.D. Ohio Mar. 28, 2012). Here, the Class contains 30,849

members. Numerosity is satisfied because it would be impossible to join all of these members into one action.

### B. Commonality

Commonality requires "a common issue the resolution of which will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542–43 (6th Cir. 2012) (finding that commonality and typicality requirements were satisfied where a single practice or course of conduct by defendant gives rise to the claims of plaintiffs and the class). "[T]he commonality requirement is typically easily satisfied in ERISA cases." *Shanechian v. Macy's*, No. 1:07-cv-00828, 2011 WL 883659, at *3 (S.D. Ohio March 10, 2011). Here, the lawsuit raised numerous common questions, including whether "Defendants' process for assembling and monitoring the Plans' menu of investment options . . . was tainted by a conflict of interest or imprudence and whether Defendants acted imprudently by failing to control recordkeeping expenses." *See Moreno*, 2017 WL 3868803, at *5. Accordingly, the commonality requirement is satisfied. *See Shirk v. Fifth Third Bancorp*, No. 05-cv-049, 2008 WL 4425535, at *2 (S.D. Ohio Sept. 30, 2008) (ERISA case finding commonality as to "whether the Defendants breached their fiduciary duties to the Plan and members of the class, [and] whether the Defendants failed to act prudently and solely in the interest of the Plan and the Plan's participants and beneficiaries").

## C. Typicality

A class representative's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quotation omitted). The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Generally, there is little doubt that a class representative's breach of fiduciary duty claim is in every respect typical of those of his fellow class members. Typicality is further supported by the fact that ERISA contains unique standing and remedial provisions that allow a participant who sues for a breach of fiduciary duty to obtain plan-wide relief." *Shirk*, 2008 WL 4425535, at *3 (citations omitted). Indeed, the fact that Plaintiffs brought the claims on behalf of the Plan "weigh[s] heavily in a Rule 23(a)(3) analysis of the parties' claims and defenses." *In Re Nortel Networks Corp. ERISA Litig.*, No. 3:03-md-01537, 2009 WL 3294827, at * 8 (M.D. Tenn. Sept. 2, 2009).

Here, the typicality element is satisfied because the Class claims are based on the same legal theories and the same alleged conduct.

## D. Adequacy of Representation

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 625 (1997). The Sixth Circuit has held that "'[t]here are

two criteria for determining whether the representation of the class will be adequate: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Powell v. Tosh*, 280 F.R.D. 296, 308 (W.D. Ky. 2012) (citing *Senter v. GMC*, 532 F.2d 511, 524–25 (6th Cir. 1976)).

Here, the Class Representatives and Class Members share common interests. No conflict exists between the Class Representatives and the Class Members they seek to represent. Also, Class Counsel has experience in the litigation and settlement of ERISA class actions and is qualified to represent the Class. Class Counsel, with the assistance of the named Plaintiffs, has devoted significant time and resources to litigating and negotiating this matter to a successful Settlement.

### E. Rule 23(b) Requirements

A putative class must also "satisfy at least one of the requirements of Rule 23(b)." *Zehentbauer Family Land, LP v. Chesapeake Expl., L.L.C.*, 935 F.3d 496, 503 (6th Cir. 2019). Here, the proposed class satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of:

> (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> (B)    adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1).  Cases such as this, which involve allegations of fiduciary breaches to a trust or plan, are precisely the type of cases that are encompassed by the rule.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (noting that a breach of trust action is a "classic example" of a Rule 23(b)(1) class; *Dudenhoeffer v. Fifth Third Bancorp*, No. 1:08-cv-538-SSB, 2016 WL 9343955, at *2 (S.D. Ohio July 11, 2016) (finding ERISA 401(k) case a "paradigmatic example" of a 23(b)(1) class); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.") (citing cases).

Specifically, certification of the class under Rule 23(b)(1)(A) is proper because prosecution of individual actions would create incompatible standards of conduct for Defendants.  The fiduciary duties imposed by ERISA are "duties with respect to a plan" that are intended to protect the "interest of the participants and beneficiaries" collectively.  *See* 29 U.S.C. § 1104(a).  Accordingly, "separate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as . . . determinations of differing 'prudent alternatives' against which to measure the

proprietary investments, or an order that Defendants be removed as fiduciaries."
*Krueger v. Ameriprise,* 304 F.R.D. 559, 577 (D. Minn. 2014); *see also*
*Shanehchian v. Macy's, Inc.*, No. 1:07-cv-00828, 2011 WL 883659, \*9 (S.D. Ohio
Mar. 10, 2011) ("If liability is found in one court but not in another, Defendants
would be left in limbo, having been vindicated with respect to their duties to the
Plans in one court but subject to judgment that would vitiate that vindication in
another, thus making compliance impossible."); *Harris v. Koenig,* 271 F.R.D. 383,
394 (D.D.C. 2010); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal.
2008).

Likewise, because an adjudication on behalf of one participant of the Plan
would effectively be dispositive of the claims of the other class members, class
certification is also appropriate under Rule 23(b)(I)(B). *See Moreno*, 2017 WL
3868803, at \*8. The Advisory Committee Notes to Rule 23 expressly recognize
that class certification is appropriate under Rule 23(b)(1)(B) in "an action which
charges a breach of trust by an indenture trustee or other fiduciary similarly
affecting the members of a large class of security holders or other beneficiaries,
and which requires an accounting or like measures to restore the subject of the
trust." Fed. R. Civ. P. 23, Advisory Committee Note (1966). "This case falls
squarely within the meaning articulated by the Advisory Committee as Plaintiff[]
allege[s] breaches of fiduciary duties affecting the Plan[] and the thousands of
participants in the Plan[]." *Shanehchian,* 2011 WL 883659, at \*10.

## V. CONCLUSION

For these reasons, the Court **GRANTS** final approval of the Settlement and enters final judgment as follows:

1.      Unless otherwise provided herein, all defined terms from the Settlement Agreement shall have the same meaning in this Final Approval Order.

2.      The Court has jurisdiction over the subject matter of this Action.

3.      Pursuant to Fed. R. Civ. P. 23(b)(1), the Court hereby finally certifies, for purposes of effectuating the Settlement only, a Settlement Class consisting of all participants and beneficiaries of the Huntington 401(k) Plan from December 29, 2011 through October 14, 2020, excluding the Defendants or any Plan participant who is or was a fiduciary to the Plan during the Class Period.

4.      The Court appoints Julie Karpik, Michelle Lewis, Deborah Mondell, Robert Owen, Linda Humenik, Diane George, and Theodore George as the Class Representatives for the Settlement Class.

5.      The Court appoints the following firms as Class Counsel for the Settlement Class: (a) Nichols Kaster, PLLP and (b) Barkan Meizlish DeRose Wentz McInerney Peifer, LLP.

6.      The Court finds that Defendants have complied with the notice requirements of 28 U.S.C. § 1715.

7.      The Notice was previously mailed to all Settlement Class Members who could be identified with reasonable effort. The form and method of notifying the Settlement Class Members of the terms and conditions of the proposed

Settlement met the requirements of Fed. R. Civ. P. 23 and due process; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons entitled thereto of the terms and conditions of the Settlement and the right to object.

8. Based on the evidence submitted by the parties, the Court concludes that the Settlement Agreement has been entered into in good faith and the Settlement is fully and finally approved as fair, reasonable, and adequate, and in the best interests of each of the Parties and Settlement Class Members. The Settlement is therefore approved, and the Parties are directed to implement and consummate the Settlement Agreement in accordance with its terms and conditions.

9. The Plan of Allocation is also hereby approved as fair, reasonable, and adequate.

10. The Court finds that the members of the Settlement Class are in privity with the interests of the Plan, its participants and its beneficiaries, and all private parties authorized to sue under ERISA sections 502(a)(2) and (3), that such private parties are adequately represented by the Class Representatives, and all parties authorized to sue under ERISA sections 502(a)(2) and (3) are hereby bound by the Settlement and this Order.

11. As of the Effective Date, all Settlement Class Members and their successors and assignees are permanently enjoined, either directly, representatively, or in any other capacity, from prosecuting, instituting, or

commencing any individual, class, representative, or other action with respect to the Released Claims against any of the Huntington Releasees.

12.    The terms of the Settlement Agreement and this Final Order and the accompanying Final Judgment shall be binding on the Parties, the Class Representatives, and all other Settlement Class Members, as well as their heirs, executors, and administrators, successors and assigns, and the Settlement shall have *res judicata* and other preclusive effect in all pending and future claims, lawsuits, or other proceedings involving the Released Claims.

13.    Class Counsel are hereby awarded attorneys' fees and reimbursement of their expenses in the total amount of $3,561,612.35 (fees of $3,500,000, plus costs of $61,512.35) to be paid from the Settlement Fund pursuant to the terms of the Settlement Agreement. In addition, the Court hereby awards to Class Representatives Julie Karpik, Michelle Lewis, Deborah Mondell, Robert Owen, Linda Humenik, Diane George, and Theodore George $7,500 each ($52,500 total) for service and assistance to the Class.

14.    The Court also approves the $107,214 in requested expenses associated with administering the Settlement, including $89,714 to the Settlement Administrator, $2,500 to the Escrow Agent, and $15,000 to the Independent Fiduciary.

15.    The Court has jurisdiction to enter this Final Approval Order and the accompanying Final Judgment. This Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement, and

interpretation of the Settlement Agreement and of this Final Approval Order and the accompanying Final Judgment, and for any other necessary purpose.

16.     The Action is hereby dismissed with prejudice in its entirety and without an award of costs, except as provided in the Settlement Agreement.

IT IS SO ORDERED.

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT